LEONARD, Respondent, vs. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Appellant.

*December 2—December 30, 1953.*

For the appellant there were briefs by *Bender, Trump, McIntyre, Trimborn & Godfrey* of Milwaukee, and oral argument by *Kneeland A. Godfrey*.

For the respondent there was a brief and oral argument by *Alvin L. Zelonky* of Milwaukee.

GEHL, J.   Defendant contends that the evidence establishes that plaintiff was guilty of negligence to a degree at least equal to that of O'Hara; that therefore there is no need for a new trial and the complaint should be dismissed. It concedes that the evidence must be considered most favorably to plaintiff, and that since he offered no other witnesses to corroborate his claim, only his testimony need be recited and considered.

Seventy-Sixth street is an arterial highway running north and south.  North of Main street it consists of two traffic

lanes each about 30 feet wide separated by a boulevard grassplot 10 feet wide. The two lanes converge at Main street and traffic bound south of Main street on Seventy-Sixth street is carried upon an undivided highway. Main street runs east and west and terminates at Seventy-Sixth street. At the time of the collision it was dark; both vehicles had driving lights on; it was cold and there were slippery ice spots on the pavement. It does not appear that the ice spots affected the ability of the drivers to control their vehicles.

Plaintiff was proceeding south in the west lane of Seventy-Sixth street, O'Hara west on Main street. O'Hara's destination was a dump west of the intersection.

Plaintiff testified on his direct examination:

As he approached Main street he was traveling at the rate of 20 to 25 miles per hour. He was about five feet west of the west edge of the boulevard. When he first saw the truck it was about 25 feet east of the east curb of Seventy-Sixth street, opposite a stop sign. At that time the truck was traveling at about 20 miles per hour and he was about 100 feet north of the north curb of Main street. He continued on and when he next saw the truck its front end was "in the center of the boulevard," and the front end of his car was about 15 feet north of the north curb of Main street traveling at the rate of 20 miles per hour. The truck was traveling at the same rate. He turned to his right. The truck continued on and straight ahead. The vehicles collided at a right angle. O'Hara's right front fender met the left front of his car. The front end of his car was not damaged. When the vehicles came to rest they were about 15 feet from the west curb of Seventy-Sixth street and two feet north of the center line of Main street.

Upon his cross-examination he testified:

He applied his brakes when he was about 15 feet north of the north curb line of Main street and did so because he could see that O'Hara was not going to stop. When he

applied his brakes and O'Hara was "about in the center of the boulevard" he started to turn to his right. The collision occurred about five feet west of the west side of the boulevard. O'Hara did not apply his brakes. The truck traveled "possibly" 35 feet west after the impact and came to a stop about 15 feet west of the west curb line of Seventy-Sixth street facing west; it had not skidded nor had it been pushed sideways. His car was locked with the truck and traveled westerly with the truck a distance of about 35 feet. A building located at the northeast corner of the intersection did not prevent him from seeing the truck as he had testified he did. Under the circumstances he could have stopped his car in a distance of from 40 to 50 feet.

The foregoing testimony would not permit the court to hold as a matter of law that O'Hara was guilty of no causal negligence. We have no difficulty in so holding. Defendant contends, however, that it discloses that plaintiff was equally guilty with O'Hara. It lays particular emphasis upon plaintiff's testimony that "his reckless conduct which continued from the time he saw the truck was not going to stop and then continued for over 100 feet," and insists that this was *the* substantial cause of the collision; that by this conduct he placed himself in a position so dangerous as to require that he be held equally at fault.

We may not say that the plaintiff's failure, while driving upon an arterial highway at a maximum speed of 25 miles per hour, to act so as to avoid a collision until he reached a point about 15 feet north of the north line of Main street contributed to the accident to a degree higher than, or equal to, that of O'Hara whose conduct would support findings that he had failed to see plaintiff's car in time to avoid a collision, that he failed in the manner in which he controlled his truck, and that he had failed to yield the right of way. It is true as defendant points out that it had obtained favorable

answers to some of the questions inquiring as to O'Hara's conduct. But, in view of the fact that the comparison of negligence was made on issues upon one of which there should not have been a finding against defendant, it was not properly made.

Some of plaintiff's testimony was disputed. . None of it is incredible, however. The truth was for the jury to find. The issue is presented upon defendant's motion for a directed verdict. In passing upon such motion the trial court was required to construe the evidence most favorably to plaintiff. *Engstrum v. Sentinel Co.* 221 Wis. 577, 267 N. W. 536. The court did not err in ordering a new trial.

About two and one-half hours after the accident one Turks, plaintiff's business partner, came to a police station and made report thereof to Officer Schill. Plaintiff testified that he had asked Turks to report and to tell the officers that his car had not skidded and that the truck had not stopped. Defendant offered to prove by Officer Schill, who had testified that when the report to him was made he assumed that the person interviewed was the plaintiff, that his report indicated that plaintiff's car had skidded, that there was no improper driving on the part of O'Hara, and that O'Hara had stopped. The record does not disclose that the court ruled upon the offer. Since the matter was not pursued we may assume and treat it as though the offer had been rejected. Defendant urges that the testimony should have been received as an admission against interest made by plaintiff's agent. We find nothing in the record which establishes that plaintiff authorized Turks to make the statements which Schill offered to repeat. In fact, as appears from the foregoing, plaintiff told Turks to report the contrary. There was no error in the ruling.

Defendant contends that if there be a new trial the issues to be tried should be limited to the questions bearing upon

negligence, that there should not be a retrial of the issue of damages. All the questions of the verdict calling for an assessment of damages except that which required an award for pain and suffering were properly answered by the court. For pain and suffering the jury awarded $1,250. The power of the court, trial and appellate, to limit the issues to be retried is generally recognized. It may be done when manifest justice demands it, and it is clear that "the course can be pursued without confusion, inconvenience, or prejudice to the rights of any party. . . ." 39 Am. Jur., New Trial, p. 45, sec. 21.

We are of the opinion that under some circumstances a court may limit the issues as is requested here. We believe, however, that that determination should in the first instance be made by the trial court and that the appellate court should have the benefit of the judge's conclusion. He is in much better position than are we to ascertain whether it would be unjust to require a party to relitigate the question of damages. It does not appear that in this case the trial court was asked to limit the issues, which undoubtedly accounts for the fact that the record fails to disclose its reason for granting a new trial on all issues. We consider that under the circumstances we should not disturb its ruling.

*By the Court.*—Order affirmed.