KORPELA, Respondent, vs. REDLIN and others, Appellants.

*March 5—April 8, 1958.*

594

For the appellants there was a brief by *Vaudreuil &
Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaud-
reuil.*

For the respondent there was a brief and oral argument by
*Donald F. Boyle* of Kenosha.

FAIRCHILD, J.   The principal questions raised by appel-
lants are: (1) That as a matter of law Redlin was not negli-
gent as to speed, (2) that if negligent, his speed was not
causal, (3) that the court should not have granted a new
trial in the interest of justice, and (4) that the damages found
by the jury are excessive.   We conclude that the finding as
to speed is supported by the evidence as well as the finding
that it was causal and that the trial court did not abuse its
discretion in granting a new trial in the interests of justice
and in limiting the new trial so as to permit the finding on
damages to stand.   Accordingly, we reach the conclusion that
the order granting a new trial is to be affirmed.

(1) *Negligence as to speed.*   There are two reasons why
the evidence presented a jury question as to excessive or
dangerous speed.   Redlin testified several times that when he
was 500 feet north of the intersection, Johnson was 500 feet
south of it.   This testimony would lead to the conclusion that
Redlin and Johnson were traveling at approximately the same
average speed.   Redlin also testified, however, that when he
was 500 feet north of the intersection, Johnson was entering
the intersection.   Johnson's speed while in the intersection
was placed at from 10 to 15 miles per hour.   On the basis
of this testimony, Johnson would have traveled a relatively
few feet while Redlin was traveling 500 feet, and the jury
could properly find that Redlin was traveling more than 40
miles per hour and thus exceeding the legal limit at that place.

In addition sec. 85.40 (2) (a), Stats. 1955, prohibits a
speed greater than is reasonable and prudent in view of the
conditions and hazards existing and requires an appropriate

reduced speed when approaching an intersection and when special hazard exists with regard to other traffic or by reasons of weather or highway conditions. The testimony was that the highway was "slick" and apparently Redlin understood for some period prior to reaching the intersection that Johnson was contemplating a left turn. The tractor-trailer unit weighed 32,000 pounds. Thus it was a jury question whether even the speed of 28 or 30 miles per hour, admitted by Redlin, was negligent.

(2) *Excessive speed was causal.* If the speed were excessive the jury could find that it was causal because it made it more difficult for Redlin to slow down or stop in time to avoid the collision. *Heagney v. Sellen* (1956), 272 Wis. 107, 112, 74 N. W. (2d) 745, 75 N. W. (2d) 801, citing *Thelen v. Machotka* (1954), 268 Wis. 1, 66 N. W. (2d) 684.

(3) *Order for new trial discretionary.* The jury found plaintiff negligent in failing to keep a proper lookout and that this negligence was a cause of the accident. The evidence presented a jury issue on these questions. The jury also found him negligent in failing to give proper warning; and that this negligence was a cause. Perhaps the jury failed to make a distinction between failure to warn because of lack of lookout and failure to warn after he saw the tractor-trailer unit. It appears that when he first saw the unit both vehicles were so close to the point of collision that failure to warn then could not have been a cause. In any event, the jury found that the excessive speed of Redlin and the lack of lookout and warning by plaintiff contributed equally to the accident. Plaintiff was a passenger. A left turn is essentially a momentary operation. It is not surprising that the trial court felt that the jury's comparison was against the great weight and clear preponderance of the evidence. The trial court has discretionary power to order a new trial in the interest of justice when a jury's comparison of negligence

is against the great weight of the evidence. *Bolssen v. Heenan,* ante, p. 110, 88 N. W. (2d) 32; *Guptill v. Roemer* (1955), 269 Wis. 12, 19, 68 N. W. (2d) 579.

(4) *Damages not excessive.* A trial judge who has seen and heard the witnesses and observed the injured party has a better opportunity than we to determine whether damages are excessive. *Koepp v. National Enameling & Stamping Co.* (1912), 151 Wis. 302, 322, 139 N. W. 179. It is primarily the trial judge who should determine whether a new trial should be limited to issues other than damages. "He is in much better position than are we to ascertain whether it would be unjust to require a party to relitigate the question of damages." *Leonard v. Employers Mut. Liability Ins. Co.* (1953), 265 Wis. 464, 470, 62 N. W. (2d) 10. We have in mind the fact that proving damages entails some considerable expense where doctors are to be witnesses, and unless the record discloses a substantial reason for reversing the trial court's determination that the damage question should not be retried, we should not do so.

While Korpela was able to return to his home by taxi after the accident, he suffered severe pain and stayed in his room until he saw his doctor December 27th. X rays then showed a fracture of the left transverse process of the third lumbar vertebra. He was in the hospital from December 31st to January 16th, treated with hot packs and sedatives to relieve pain. He tried to work on February 17th, suffered pain, and an X ray then showed the process had not healed. He had been fitted with a brace while in the hospital and wore it until he returned to work on March 30th. He testified he could not work before March 30th. He had been earning $97.20 per week and thus could have earned $1,263.60 in thirteen weeks. The jury allowed $1,200 for loss of earnings.

Korpela's work has generally been on construction jobs. He was a carpenter helper at the time of the accident and

worked as such after March 30, 1956, and until the time of trial. He testified that he has slight pain at all times with some stiffness; some days are good and some are not; at the end of a full day his back gets tired. He can't bend to the right as much as to the left.

An orthopedic surgeon had been called in while Korpela was in the hospital and treated him thereafter. He testified that the transverse process is a place for attachment of the muscle structure that supports the spinal column. A fracture of the transverse process is primarily a muscle injury and the muscle spasm is so great that it pulls the ridge of bone over and there is a lot of pain. It leaves scar tissue that causes restricted motion, stiffness, and soreness. Shortly before trial, May 2, 1957, he examined Korpela and found a moderate amount of muscle spasm in the right lumbar region, found him able to bend normally to the left and backward, but only 50 per cent to the right. It was the doctor's opinion that Korpela will continue to have discomfort and some restriction of motion; that he will be able to do heavy work at times, but will be unable to do heavy work continuously; that Korpela has seven or eight per cent permanent disability. Korpela had never had back trouble before the collision and was forty-three years of age at the time of trial, with a life expectancy of approximately twenty-six years. The jury allowed $12,500 for personal injuries in addition to the $1,200 for loss of earnings. In our opinion, the award is sustained by the evidence and the record discloses no reason to overrule the trial court's determination that the damage award was fair and need not be retried.

*By the Court.*—Order affirmed.