SMITH, Appellant, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY and another, Respondents.

*No. 137. Argued November 27, 1972.—Decided January 3, 1973.*
(Also reported in 203 N. W. 2d 34.)

---

[15] *McDonald v. Chicago, M., St. P. & P. R. R.* (1968), 38 Wis. 2d 526, 534, 157 N. W. 2d 553.

754

For the appellant there was a brief by *Steele, Smyth, Klos & Flynn* of La Crosse and oral argument by *Marvin H. Davis* of La Crosse.

For the respondents there was a brief by *Leon E. Sheehan* and *Moen, Sheehan & Meyer,* all of La Crosse, and oral argument by *Leon E. Sheehan.*

HANLEY, J.    Plaintiff seeks a new trial on the following grounds:

1.  The apportionment of negligence is contrary to the evidence.

2.  The trial court erred in refusing to instruct the jury that the driver of a car approaching an intersection regulated by a flashing red light has a greater duty of lookout than a driver approaching a flashing yellow light.

3.  The jury award of $2,000 for pain, suffering and disability was inadequate.

4.  The trial court erroneously excluded certain medical bills.

5. The trial court erroneously excluded items of future and past wage loss.

6. In the interest of justice.

7. The trial court erred in assessing the cost of a jury, which had to be dismissed, against the plaintiff.

*Apportionment of negligence.*

The incident occurred about 11:30 p. m. on December 23, 1965, at the intersection of La Crosse Street and West Avenue in the city of La Crosse. La Crosse Street runs in an easterly and westerly direction while West Avenue runs in a northerly and southerly direction. Plaintiff was alone in his car and was proceeding in an easterly direction. The defendant was at the same time proceeding southerly on West Avenue.

The traffic control signals which controlled the intersection at the time of the collision controlled traffic on West Avenue by means of a flashing red light and traffic on La Crosse Street by means of a flashing yellow light.

The impact occurred in the southwest quadrant of the intersection with the defendant's auto being hit in the general area between the right front wheel and the right passenger door.

Plaintiff's first assignment of error is that the jury's verdict is grossly out of line with the facts of the case. In the past, this court has been very reluctant to change the apportionment of negligence determined by the jury.

" 'In the great majority of automobile accident cases the comparison of negligence is for the jury, and the instances in which a court can rule as a matter of law that the negligence of a plaintiff equaled or exceeded that of a defendant are extremely rare.' " *Sailing v. Wallestad* (1966), 32 Wis. 2d 435, 438, 145 N. W. 2d 725.

Where the trial court has specifically approved the apportionment of negligence when it ruled on motions

after verdict as was done here, this court's inquiry will be " 'limited to the issue whether there is any credible evidence that, under any reasonable view, supports such findings.' " *Sailing v. Wallestad, supra,* at page 439, and in passing on this issue, the court need only consider such evidence as tends to support the verdict. *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 289, 151 N. W. 2d 86.

When the evidence in the present case is so viewed, we cannot, as a matter of law, hold it will not support the verdict. For some time prior to the accident, it had been snowing and testimony indicates that there was from two to three inches of snow on the ground with road conditions being described as slushy and somewhat slippery. As defendant Willer came to a stop for the flashing red light, the front end of his car was alongside of the light. He testified that when he stopped he looked in both directions. To his left, he noticed a car traveling in a westerly direction on La Crosse Street and that the car was far enough away so as to not cause any danger. From where he was parked, the defendant testified that he could see down to the southwest corner of the next intersection—approximately 200 feet away— and that when he looked in this direction, he was unable to see any approaching car.

After making these observations, defendant began to accelerate, intending to proceed completely through the intersection. It was testified to that as defendant started forward, he again glanced both ´right and left, and that the only car which he saw was the same one he had earlier noticed traveling west on La Crosse Street. The driver of the westbound car was James Birnbaum, the only disinterested witness to the accident.

Birnbaum testified that he saw the defendant's car stopped at the red stoplight and saw it start forward to go through the intersection and that he made these observations from a distance of about 75 yards from

the intersection. As defendant began to accelerate at a slow and steady pace, Birnbaum testified that the plaintiff's car was in the area of Howie's Bar or about from 240 to 150 feet west of the center line of the intersection. According to Birnbaum, he never noticed any attempt on the part of the plaintiff's car to slow or stop nor did he notice the plaintiff's headlights dip, indicating that the brakes had not been applied until just before the collision.

The posted speed limit for La Crosse Street is 25 miles per hour and about four or five blocks away from the intersection, plaintiff noted that he was going 30 miles an hour and took his foot off the gas to slow his speed to between 20 and 25 miles per hour. There was testimony that the plaintiff did not look at the speedometer after he let up on the accelerator while doing 30 miles per hour. Plaintiff further testified that when he entered the intersection he slowed, but up to that point had maintained about the same speed of from 20 to 25 miles per hour and that he did not think he could have been going any faster and that he was not going any slower. From the point where he first saw the defendant's car, his speed was such that he could not stop in time to avoid the impact.

Plaintiff here erroneously assumes that the only basis of finding negligence on his part was lookout and that, therefore, the jury apportioning less negligence to Willer on negligence as to lookout and failing to yield the right-of-way, is grossly disproportionate.

On the credible evidence adduced, the jury was entitled to believe that while Willer was negligent as to lookout and right-of-way, the plaintiff Smith was negligent as to speed and lookout.

In the case of *Ide v. Wamser* (1964), 22 Wis. 2d 325, 126 N. W. 2d 59, this court refused to tamper with the jury's apportionment of 54 percent of the total negli-

gence to the driver on an arterial highway who was proceeding into an intersection against a flashing yellow light and 44 percent against the driver approaching against the flashing red light. At page 332 of the opinion, it was stated that:

"In the instant case, there was evidence from which the jury could infer that Wamser was proceeding too fast for the conditions which prevailed."

After a review of the evidence as to the plaintiff's speed, the jury in the case at bar could easily have drawn the same inference. The jury could, in apportioning the causal negligence, find that plaintiff's speed was the dominating factor in causing the collision.

We conclude there is credible evidence that, under any reasonable view, supports the jury's findings in the apportionment of causal negligence.

*Alleged error in instructing jury.*

The plaintiff contends that an instruction should have been given that Willer, facing the red light and with the duty to yield the right-of-way, had the additional duty of a greater degree of lookout than did plaintiff, citing as authority therefor *Seitz v. Seitz, supra,* wherein this court discussed at length the rights and duties of the drivers at an intersection controlled by flashing red and yellow lights, as established by sec. 346.39, Stats.

The rule in the *Seitz* case does not establish different standards of care as to lookout per se, but takes into account that both drivers have a duty to maintain an efficient lookout and that in addition, the driver proceeding against the red signal has a duty to yield the right-of-way so that if the negligence as to lookout

is equal, then the driver who is to yield the right-of-way is more negligent.

In analyzing plaintiff's argument we must start from the very well-established premise that it is the absolute duty of every operator of a motor vehicle to exercise ordinary care to keep a careful lookout ahead and about him to avoid an accident. *Brown v. Travelers Indemnity Co.* (1947), 251 Wis. 188, 192, 28 N. W. 2d 306, and the jury was so instructed.

We conclude that the trial court gave the proper instruction to the jury with respect to lookout.

*Damages.*

The jury found that $2,000 would compensate the plaintiff for his pain, suffering and disability, past and future, occurring as a result of the accident.

Plaintiff contends the damages awarded are contrary to the credible evidence, are indicative of passion, prejudice and perversity and are inadequate.

The general rule regarding the awarding of inadequate damages where the jury has otherwise determined that there is no liability on the part of the defendant is set forth in *Willenkamp v. Keeshin Transport System, Inc.* (1964), 23 Wis. 2d 523, 127 N. W. 2d 804 at page 530:

"In *Sell v. Milwaukee Automobile Ins. Co.* (1962), 17 Wis. 2d 510, 519, 117 N. W. 2d 719, the court stated:
" 'The rule is that where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse. *Schulze v. Kleeber* (1960), 10 Wis. 2d 540, 103 N. W. 2d 560; *Dickman v. Schaeffer* (1960), 10 Wis. 2d 610, 103 N. W. 2d 922 and *Goelz v. Knoblauch* (1943), 242 Wis. 186, 7 N. W. 2d 420.' "

Moreover, the evidence and testimony was conflicting and in many respects vague. There was conflicting testimony that the plaintiff had a congenital anomaly and that his pain or discomfort was in this area; that he had a nerve root compression and the myelograms showed a small protruded disc and, on the contrary, that the myelograms did not show a protruded disc as evidenced by Dr. Morris' testimony.

There was medical testimony that Smith's complaints were disproportionate to any physical condition found and that his complaints were subjective. There was medical testimony that the ordinary activities of life rather than the accident could have triggered his back complaints and claimed disability. There was testimony that after the herniated fat pad was removed in 1967, he had only slight complaints. There was no objective evidence of any nerve root compression according to at least one of the doctors. At least, one of the doctors declined to infer that the accident caused the congenital anomaly to become symptomatic. Some of the doctors testified that the pain or discomfort complained of by Smith was in the area of his congenital anomalies and that they could not say whether or not the anomalies were causing the complaints.

Based on this record, we think there is sufficient evidence from which the jury could have determined that $2,000 was an appropriate award.

*Exclusion of certain medical bills.*

Plaintiff contends that only part of the medical bills and expenses actually paid by the plaintiff became a damage finding in the verdict. Plaintiff alleges that the court erred in not allowing the jury to consider as evidence certain medical bills.

Prior to trial, the parties stipulated that all expenses claimed by plaintiff were reasonable in amount and were incurred by plaintiff. There was, however, no stipulation regarding the necessity for the bills by reason of

this accident, other than to the extent of $699.85 and, thereby, plaintiff was put to his proof as to them.

Plaintiff failed to prove the medical necessity for such bills in connection with the accident and failed to mark and offer them into evidence. Such proof was essential because there was testimony and evidence that some of the treatment and hospitalization was due to causes other than the accident.

*Exclusion of evidence of future and past wage loss.*

Plaintiff argues that the trial court erred in excluding from the jury's consideration his claim of wage loss and impairment of future earning capacity, apart from the $393.25 which defense counsel had stipulated to and which the court answered in the verdict. The court's finding was based upon the fact that the plaintiff had not laid a proper foundation upon which his witnesses who were called to demonstrate plaintiff's losses from his private logging business, could give opinion testimony as to the fair market value of the services performed by plaintiff. Plaintiff worked as a manager for a sawmill, in effect doing hiring, estimating, hauling, firing and many other responsibilities delegated by the owner. There was no testimony as to how much other men in similar businesses were paid, and the last time the owner had hired such an individual was three or four years prior to trial.

We think the trial court was correct in its ruling. Juries should not be required to speculate on items of damages.

*Reversal in the interest of justice.*

Plaintiff asks this court to grant him a new trial in the interest of justice, pursuant to sec. 251.09, Stats., and in so doing, gives six specific reasons, none of which are any different from his original assignments of error. We find no merit in any of these assignments of error

and it follows that there has not been a probable miscarriage of justice.

*Reimbursement of county for jury costs.*

Plaintiff also purports to be appealing from an order of the La Crosse County Court dated May 25, 1970, which made a condition precedent to placing this case on the calendar for trial, that the plaintiff within thirty days pay to the county treasurer $373.30 in jury fees and $24.80 in bailiff's fees. According to the order itself, its issuance was necessitated by the introduction of a new medical report by plaintiff on the day before trial. It goes on to state that defendants had been led to believe that plaintiff had been discharged from treatment and that he was on the road to recovery and that the introduction of this new report on the eve of trial constituted a surprise, entitling defendants to a continuance.

In the case of *Russell v. Johnson* (1961), 14 Wis. 2d 406, 111 N. W. 2d 193, the trial court, upon being informed by plaintiff that he was not ready for trial, dismissed the complaint without prejudice and imposed as a condition for commencing a new action, the reimbursement of the county for expenses incurred. *Russell* held the order appealable under sec. 274.33, Stats.

There is no distinction between the order entered in *Russell* and the order entered in the case at bar; they both being appealable orders reviewable by this court. The record discloses no notice of entry of this order and unless by some provision this order can be reviewed in conjunction with the judgment, plaintiff is precluded from now raising it since sec. 274.01, Stats., gives him only six months from May 25, 1970, the date on which the order was entered, to take his appeal. Plaintiff's notice of appeal, dated May 6, 1971, is almost one year from the date when the order was entered.

Sec. 274.34, Stats., provides that review of an intermediate order, *involving the merits,* may be reviewable

upon appeal from the judgment. *Drake v. Scheunemann* (1899), 103 Wis. 458, 79 N. W. 749. However, the order here did not involve the merits of the action and sec. 274.34, Stats., is clearly not applicable to the case at bar. Consideration of the order is clearly not properly before this court.

*By the Court.*—Judgment affirmed; review of order denied.