GROSS, Respondent, v. DENOW and others, Appellants.

*No. 227.   Argued October 1, 1973.—Decided November 12, 1973.*
(Also reported in 212 N. W. 2d 2.)

For the appellants there was a brief by *Otjen, Philipp & McFadyen* of Milwaukee, for the defendant-appellant; a brief by *Thomas J. Regan* of Milwaukee, for the cross appellants; and oral argument by *Ernest J. Philipp* and *Thomas J. Regan.*

For the respondent there was a brief by *James J. Murphy* and *Habush, Gillick, Habush, Davis & Murphy,* all of Milwaukee, and oral argument by *James J. Murphy.*

ROBERT W. HANSEN, J. Issues raised on this appeal relate to: (1) The applicability of the safe-place statute; (2) the apportionment of negligence; and (3) the award of damages. Each is separable from the others, and each will be treated separately on this review.

*Applicability of safe-place statute.*

As to plaintiff's cause of action against Midwest for violation of the safe-place statute, the initial inquiry is whether the dirt road on which plaintiff was injured was a "place of employment" under that statute. The safe-place statute provides in pertinent part:

"(a) The phrase 'place of employment' includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, but does not include any place where persons are employed in (a) private domestic service which does not involve the use of mechanical power or (b) farming. . . ." [1]

Of this statutory reference to a "place of employment" this court has observed:

". . . The words, 'place of·employment' are descriptive. They furnish an outline of a definition and, as used in the statute, indicate a purpose to protect employees and lawful frequenters. Those words naturally carry the idea of a place necessarily used by one or more persons engaged in an enterprise for the purpose of gain or profit, direct or indirect. . . ." [2]

We deal here with a private thoroughfare, on the premises and under the control of the racetrack operator.[3] So we do not have the issue of a public place, not under ownership or control of the employer, being considered a "place of employment." [4] The racetrack was "an enterprise for the purpose of gain or profit." The spectators and drivers using the road from pit area

[1] Sec. 101.01 (2) (a), Stats. (then sec. 101.01 (1), Stats. 1967).

[2] *Mennetti v. West Side Businessmen's Asso.* (1945), 246 Wis. 586, 590, 18 N. W. 2d 487. *See also: Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. 2d 601, 605, 111 N. W. 2d 495; *Ball v. Madison* (1957); 1 Wis. 2d 62, 65, 82 N. W. 2d 894.

[3] *See: Filipiak v. Plombon* (1962), 15 Wis. 2d 484, 113 N. W. 2d 365.

[4] *See: Gordon v. Schultz Savo Stores, Inc.* (1972), 54 Wis. 2d 692, 697, 196 N. W. 2d 633; *Peppas v. Milwaukee* (1966), 29 Wis. 2d 609, 139 N. W. 2d 579, 141 N. W. 2d 228.

to parking area were "lawful frequenters." The permitted use of the road by drivers and spectators was directly related to the business being carried on.

The safe-place statute provides that it is an employer's duty to furnish safe employment and place. The applicable statute, in part, provides:

"(1) Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe." [5]

Under this statute an employer has a duty to make the "place of employment" as safe as the nature of the employment will reasonably permit, a higher duty than that of ordinary care.[6] The statute does not make the employer an insurer.[7] The duty set by the statute is not breached merely because the place could be made safer.[8] The employer's duty to furnish a safe place is an absolute one, but the term "safe" is relative, not absolute.[9] As this court has said, "The point is simply that the statute

---

[5] Sec. 101.11 (1), Stats. (then sec. 101.06, Stats. 1967).

[6] *Krause v. Menzner Lumber & Supply Co.* (1959), 6 Wis. 2d 615, 622, 95 N. W. 2d 374.

[7] *Heckendorf v. J. C. Penney Co.* (1966), 31 Wis. 2d 346, 350, 142 N. W. 2d 801.

[8] *Paaske v. Perfex Corp.* (1964), 24 Wis. 2d 485, 490, 129 N. W. 2d 198.

[9] *Zernia v. Capitol Court Corp.* (1963), 21 Wis. 2d 164, 170e, 124 N. W. 2d 86, 125 N. W. 2d 705.

recognizes a 'rule of reason.' " [10] What is a safe place depends upon the facts and conditions present,[11] and the use to which the place "was likely to be put." [12]

This court has made clear that the "safe-place statute deals with unsafe conditions and not with negligent acts as such." [13] So the question arises, In what respect or particular was the roadway from the pit area to the parking area unsafe? The plaintiff seeking to keep all options open is less than precise in describing the particular in which the road was unsafe. It is suggested that the bumpiness of the road constituted an unsafe condition. However, there is in this record no causal link between the fact of bumpiness and the occurrence of the accident. It is suggested the absence of a warning to pedestrians that vehicles were using the road constituted an unsafeness of condition. However, applied to the plaintiff, himself a racetrack driver who had previously used the road as a driver as well as a pedestrian, such warning would not have told him anything that he did not already know. The sole basis for holding the road to be in an unsafe condition derives from the fact that the racetrack operator had the required constructive notice,[14] that a narrow roadway was simultaneously used as an exit route by pedestrians (pedestrian traffic on the left side of the road at the time of the accident was "heavy"), and by vehicle drivers (about

[10] *Id.*

[11] *Powless v. Milwaukee County* (1959), 6 Wis. 2d 78, 81, 94 N. W. 2d 187.

[12] *Gould v. Allstar Ins. Co.* (1973), 59 Wis. 2d 355, 362, 208 N. W. 2d 388.

[13] *Gilson v. Drees Brothers* (1963), 19 Wis. 2d 252, 257, 120 N. W. 2d 63 (citing *Deaton v. Unit Crane & Shovel Corp.* (1953), 265 Wis. 349, 61 N. W. 2d 552).

[14] *See: Presti v. O'Donahue* (1964), 25 Wis. 2d 594, 599, 131 N. W. 2d 273 (citing *Longberg v. H. L. Green Co.* (1962), 15 Wis. 2d 505, 113 N. W. 2d 129, 114 N. W. 2d 435).

75–80 cars were in the pit area of the track on the night involved). The court majority that wrote *Gould* would hold that such known use to which the narrow road was being put entitled a jury to find that devices reasonably available to the racetrack operator might have been used to meet the standard of care required by the statute.[15] Prohibiting pedestrian traffic or providing a fence separating pedestrian and vehicular traffic are devices that would have made the road as safe as its nature would reasonably permit.

*Apportionment of negligence.*

The jury apportioned 70 percent of the causal negligence to Midwest, 25 percent to driver-defendant Denow, and five percent to pedestrian-plaintiff Gross. This court has consistently held that the apportionment of negligence is within the special province of the jury and it is "only where it clearly appears that negligence of one party equals or exceeds that of another that the court will interfere."[16] This rule and exception apply in safe-place cases as well as in ordinary negligence actions.[17] It follows that "[a]lthough there is judicial

[15] *Gould v. Allstar Ins. Co., supra,* at page 362, stating: "In view of the nature of the use to which the pier was likely to be put, the premises were not safe. There was evidence from which the jury could conclude that the premises were not kept as free from danger as the nature of the place would reasonably permit." *See also: Presti v. O'Donahue, supra,* at page 599, stating: ". . . While this does not mean that the employer had a duty to furnish devices that would insure the safety of a frequenter, it does mean that the jury may determine whether the employer might not have supplied devices that would have made the place as safe as its nature would reasonably permit."

[16] *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 45, 168 N. W. 2d 112. *See also: Smith v. St. Paul Fire & Marine Ins. Co.* (1973), 56 Wis. 2d 752, 755, 203 N. W. 2d 34.

[17] *Id.* at page 46, citing *Klein v. Montgomery Ward & Co.* (1953), 263 Wis. 317, 57 N. W. 2d 188, as holding: "A court undoubtedly has authority to overturn a jury's apportionment of

reluctance to change the jury's apportionment and to find a plaintiff at least equally negligent, the court will do so where 'the evidence of the plaintiff's negligence is so clear and the quantum so great.' " [18] And where it appears ". . . that the negligence of the plaintiff is as a matter of law equal to or greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold." [19]

The jury verdict here found the racetrack operator 70 percent negligent for permitting both pedestrian and vehicular traffic on one of three exit routes from the seating area to the parking area. The verdict found the pedestrian plaintiff five percent causally negligent for voluntarily and knowingly choosing to exit by the route where pedestrian and vehicular traffic were permitted. The plaintiff had been a racetrack driver on prior occasions at the racetrack involved. As such, he had used the third exit route as a driver. He knew both pedestrians and vehicles used the road he selected to walk along. He knew the other two exit routes—shorter and more direct—did not have vehicular traffic moving on them. The jury verdict that the one who maintained the road was 14 times as causally negligent as the person who chose it as an egress cannot stand.

Frequenters of a public place or building are under an obligation to exercise ordinary care for their own safety.[20] While assumption of risk is not a defense under the

negligence in safe-place cases as well as in ordinary negligence matters." (Quoted in *Rewolinski v. Harley-Davidson Motor Co.* (1966), 32 Wis. 2d 680, 684, 146 N. W. 2d 485.)

[18] *Id.* at page 46, citing *Schwarz v. Winter* (1956), 272 Wis. 303, 309, 75 N. W. 2d 447.

[19] *Skybrock v. Concrete Construction Co.* (1969), 42 Wis. 2d 480, 490, 167 N. W. 2d 209 (citing *Peters v. Chicago M., St. P. & P. R. R.* (1939), 230 Wis. 299, 301, 283 N. W. 803; *Hollie v. Gilbertson* (1968), 38 Wis. 2d 245, 250, 156 N. W. 2d 462).

[20] *Powless v. Milwaukee County* (1959), 6 Wis. 2d 78, 85, 94 N. W. 2d 187 (citing *Du Rocher v. Teutonia Motor Car Co.* (1925), 188 Wis. 208, 205 N. W. 921).

safe-place statute, contributory negligence is.[21] So a fan
in the stands, hit by a foul ball, for "failing to take any
precaution for her own safety," has been held by this
court to be "at least as negligent as the defendants
[baseball club and stadium owner]."[22] Where a pedes-
trian walked on a street under construction with "full
knowledge of this fact," and there was "an alternate
route," this court held that "the negligence of the plain-
tiff [who fell] was at least equal to or greater than that
of the defendant [construction company] as a matter of
law."[23] When a plaintiff, injured after crawling
through a window to get into a locked room, "had other
alternative courses of action which were open to him
and which were more reasonable and more safe," this
court upheld a trial court holding that plaintiff's negli-
gence was "equal to that of the defendant as a matter of
law."[24] Where a plaintiff shopper walked over a length
of wire fencing on the floor, "[a]lthough the plaintiff
easily could have walked around it, he chose to walk over
the wire, tripped on it and fell," this court held as a
matter of law that plaintiff's negligence was equal to
that of defendant store owner.[25] In the case before us,

[21] *Id.* at page 85, citing *Washburn v. Skogg* (1931), 204 Wis.
29, 233 N. W. 764, 235 N. W. 437.

[22] *Id.* at page 86, stating: ". . . We are convinced that the
plaintiff—in voluntarily going to the game, sitting where she did,
ignoring the fact that the batter was at bat, ignoring the noise
and excitement after hearing the report of the bat hitting the ball,
and in failing to take any precaution for her own safety—was at
least as negligent as the defendants, assuming defendants were
negligent under the safe-place statute."

[23] *Skybrock v. Concrete Construction Co., supra,* at page 490,
noting: "The plaintiff entered the construction site at her own
peril. It was obvious that the street was under construction and
the plaintiff had full knowledge of this fact. . . . The availability
of the new sidewalk provided an alternate route."

[24] *Rewolinski v. Harley-Davidson Motor Co., supra,* at page 684.

[25] *Id.* at pages 684, 685, summarizing *Klein v. Montgomery Ward
& Co., supra,* as follows: "In the *Klein Case,* the plaintiff, who

where the plaintiff selected from among three exit routes the one in which pedestrian and vehicular traffic were commingled, and where he failed to keep a proper lookout for vehicles passing to his right while he proceeded along the route, his negligence in both respects combined was at least equal to that of the racetrack operator who built and maintained the road involved. Setting aside the jury apportionment is required, and the cause is remanded for a new trial on the issue of negligence only.

*Award of damages.*

The jury awarded damages in the amount of $35,000. This sum did not include an award of $2,777.01 for wages lost and medical expenses set by the trial court and not challenged on this appeal. This is not the more usual high-speed automobile accident with multiple injuries. The plaintiff was walking alongside the road with automobiles and trailers passing him and without looking back to see who was approaching or how close to his line of walking they were moving. The defendant driver testified he was driving five miles an hour as his automobile came abreast of plaintiff and just before the wider trailer caught plaintiff and pulled him to the ground. Apparently the wheel of the trailer went over plaintiff's foot and he sustained a fractured ankle. For the sole injury of a fractured ankle, an award of $35,000 would be excessive, as defendants-appellants argue this award to be. However, something more than a typical ankle fracture is here involved. As the trial court stated, "this sum [$35,000] includes past pain, suffering and

was shopping in the defendant's store, walked over a length of wire fencing which a salesman had unrolled on the floor. Although the plaintiff easily could have walked around it, he chose to walk over the wire, tripped on it and fell. This court held as a matter of law that the plaintiff's negligence was equal to that of the defendant."

disability, and future pain, suffering and disability and reduced earning capacity." The plaintiff testified to daily pain and disability, particularly during the working day. As the trial court noted, on motions after verdict, ". . . the defendant's own doctor, Dr. James Regan, admitted there was nothing that medical science could do to correct the condition, and the plaintiff would have to live with the pain." At the time of trial the plaintiff was thirty-one years of age and had a life expectancy of 40.1 years, according to the United States Department of Health, Education and Welfare mortality table. This court has stated that ". . . unless the record discloses a substantial reason for reversing the trial court's determination that the damage question should not be retried, we should not do so." [26] We find no such substantial reason here and affirm the trial court holding, on motions after verdict, that "the sum of $35,000 awarded by the jury is not unreasonable taking into consideration the nature of the injury, and the effect that such injuries are calculated to have on the plaintiff during his future life of some forty-plus years."

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for a new trial on the issue of negligence only.

WILKIE, J. *(concurring).* The principal difficulty here, as with many accident cases involving multiple defendants, is the fundamental proposition that the comparison of negligence is always made as between the individual plaintiff and each individual defendant rather than the individual plaintiff with the several defendants

[26] *Korpela v. Redlin* (1958), 3 Wis. 2d 591, 597, 89 N. W. 2d 305, this court noting: "A trial judge who has seen and heard the witnesses and observed the injured party has a better opportunity than we to determine whether damages are excessive." (Citing *Koepp v. National Enameling & Stamping Co.* (1912), 151 Wis. 302, 322, 139 N. W. 179.)

that may, by their negligence, have collectively contributed to his injuries. The unfairness of this approach grows from the fact that one or more defendants may have contributed to his injuries, yet he can recover only in those situations where he can demonstrate that his negligence is either less than or as great but not greater than the negligence of one or more defendants considered separately. This is provided by the statutory language of the comparative negligence law under sec. 895.045, Stats., which, as recently amended in 1971, still provides:

"**Contributory negligence.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

The legislature should further amend the basic comparative negligence law in Wisconsin to correct this inequity so as to provide for recovery based on a comparison of the causal negligence, if any, of the person injured with the total negligence of all of the persons whose negligence contributed to the injuries. If the plaintiff is considered less negligent, or his negligence is considered only as great as the combined negligence of all of the defendants, then he should be able to recover from the contributing defendants in proportion to their causal negligence.

I am authorized to state that Mr. Justice BEILFUSS joins in this concurring opinion.

HALLOWS, C. J. *(dissenting, in part)*. I think this case is a good example of why this court should apply

the *Powers* rule [1] to the apportionment of negligence as it does to damages. This proposed application of the *Powers* rule was first advocated in *Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 314, 151 N. W. 2d 68, in the concurring opinion, and I have reiterated it in *Pruss v. Strube* (1968), 37 Wis. 2d 539, 546, 155 N. W. 2d 650, and again in *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 139, 177 N. W. 2d 513 (dissenting opinion) and *Bourassa v. Gateway Erectors, Inc.* (1972), 54 Wis. 2d 176, 181, n. 1, 194 N. W. 2d 602. If this court is capable of determining in this case that the apportionment of causal negligence to the pedestrian, to the automobile driver, and to the owner of the premises was error and to decide that the pedestrian was at least as negligent as the owner of the racetrack, then this court is capable of determining the apportionment of causal negligence between the three parties with a proper option for a new trial in the event the apportionment is not accepted and should do so. A trial court apportions negligence in a trial to the court and I see no difference in the ability of the trial court to review and correct the apportionment of negligence by the jury. The apportionment of causal negligence is no more peculiarly the province of the jury than damages.

If this state is to keep its present form of comparative negligence (sec. 895.045, Stats.), then the rule should provide for the comparison of plaintiff's causal negligence with the combined negligence of all the other persons who were causally negligent and not compared with each tort-feasor's causal negligence separately. Under the present rule, if the plaintiff is 34 percent negligent and defendant A is 33 percent negligent and defendant B is 33 percent negligent, the plaintiff cannot

---

[1] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

recover against either A or B although his negligence is not as great as their combined negligence; this is unfair. The rule of comparing the causal negligence of the plaintiff with the causal negligence of each defendant separately originated by the construction of the statute in *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 252 N. W. 721. In that case the court held that while the plaintiff's negligence had to be a factor in the comparison of all the negligence contributing to the damages in a multi-tort-feasor case, the plaintiff's recovery was based on a comparison of his negligence with the negligence of each tort-feasor separately. This doctrine was followed in *Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. 2d 601, 609, 610, 111 N. W. 2d 495. In neither of these cases did the court consider sec. 990.001 (1), nor its predecessor section. This section relates to the rules for the construction of laws and provides the singular includes the plural and the plural includes the singular. I would overrule *Walker* and *Schwenn* and compare the negligence of the plaintiff with the combined negligence of all the other persons whose negligence is causal to determine whether the plaintiff can recover. This is the rule in Arkansas,[2] Connecticut, Nevada, and Texas.[3]

[2] Comparative negligence in Arkansas is provided for by statute. Ark. Stat. Annot., sec. 27–1730.1 (Repl. 1962) provides that "Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of *less degree* than the negligence of any person, firm, or corporation causing such damage." Sec. 27–1730.2 states the rule that "where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence." The Arkansas Supreme Court has construed sec. 27–1730.1 to mean that a contributorily negligent plaintiff may recover if his negligence is less than that of all the defendants combined. *Walton v. Tull* (1962), 234 Ark. 882,

In the dissenting opinion in *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 131, 177 N. W. 2d 513, it was suggested that this court should adopt the pure comparative negligence doctrine. Since that time, many states have adopted some form of comparative negligence either by statute or by court rule. *See* Annot. (1970), *Negligence-Comparative-Contributory*, 32 A. L. R. 3d 463; 15 Personal Injury Commentator 380–383.[4] The present Wisconsin statute (sec. 895.045), amended by Laws of 1971, ch. 47, after the *Vincent Case*, provides the plaintiff can recover if his negligence is "not greater than" the negligence of the person against whom recovery is sought. There are six other states which have this formula of comparative negligence.[5] Prior to 1971,

891–894, 356 S. W. 2d 20; *Riddell v. Little* (Ark. 1972), 488 S. W. 2d 34, 36. In *Walton,* the court observed that the basic purpose of the statute "is to distribute the total damages among those who caused them . . . We are not convinced that the legislature meant to go any farther than to deny a recovery to a plaintiff whose own negligence was at least 50 percent of the cause of his damage." It should be noted that, in *Walton,* the Arkansas Supreme Court specifically rejected the reasoning of *Walker v. Kroger Grocery & Baking Co., supra,* as unsatisfactory. The Arkansas court, notably, considered the Arkansas and Wisconsin statutes comparable.

[3] Conn. Public and Special Acts, Vol. XXXVI, Public Act No. 273, sec. 6 (a) (effective Jan. 1, 1973); Nevada Laws of 1973, ch. 787 (Senate Bill No. 524) (approved May 3, 1973); Texas Laws of 1973, ch. 28.

[4] *See also:* Ghiardi and Hogan, *Comparative Negligence—The Wisconsin Rule and Procedure,* 18 Defense Law Journal, No. 5 (October, 1969), reprinted by the Defense Research Institute Monograph Series.

[5] *Connecticut*—Public Act No. 273, sec. 6 (a) (effective Jan. 1, 1973). The Connecticut rule differs from sec. 895.045, Wis. Stats., as construed by *Walker v. Kroger, supra,* in that, by statute, Connecticut has declared that the negligence of the defendants should be combined in order to determine whether the plaintiff can recover.

*New Hampshire*—N. H. Rev. Stats. Annot. (1971), sec. 507:7–a.

Wisconsin's comparative negligence statute provided the plaintiff could recover only if his negligence was "not as great as" the negligence of the person against whom recovery is sought. *See* sec. 895.045, Stats. 1969. There are ten states which have adopted this formula.[6] There

*Vermont*—Vermont Stats. Annot. (1973), title 12, sec. 1036 (effective July 1, 1970).

*New Jersey*—Laws of 1973, ch. 146; N. J. S. A. 2A:15–5.1 to 2A:15–5.3.

*Nevada*—Laws of 1973, ch. 787 (Senate Bill No. 524), amending ch. 41 of Nevada Revised Statutes (Approved May 3, 1973). The Nevada formula approximates the Connecticut formula. Nevada provides that "the contributory negligence of the plaintiff shall not bar a recovery if the negligence of the person seeking recovery was not greater than the negligence or gross negligence of the person or persons against whom recovery is sought . . . the judge may, and when requested by any party shall instruct the jury that: (a) The plaintiff may not recover if his contributory negligence has contributed more to the injury than the negligence of the defendant or the combined negligence of multiple defendants."

*Texas*—Laws of 1973, ch. 28 (H. B. No. 88) (effective Sept. 1, 1973). The Texas formula is also patterned on the Connecticut approach. Texas provides that contributory negligence "shall not bar recovery . . . if such negligence is not greater than the negligence of the person or party or persons or parties against whom recovery is sought . . . ."

[6] *Arkansas*—Ark. Stat. Annot., sec. 27–1730.1 (Repl. 1962). As noted previously in footnote 2, *supra*, the Arkansas formula provides that a plaintiff may recover if his negligence is less than the combined negligence of all defendants.

*Colorado*—Colo. Rev. Stats., sec. 41–2–14 (1963) (Cum. Supp. 1971) (effective July 1, 1971).

*Idaho*—Laws of 1971, ch. 186 (effective May 20, 1971), Idaho Code (Cum. Supp. 1973) sec. 6–801.

*Hawaii*—Laws of 1969, ch. 227, sec. 1, Hawaii Rev. Stats., sec. 663–31 (effective June 14, 1969).

*Massachusetts*—Mass. Annot. Laws, ch. 231, sec. 85 (effective January 1, 1971).

*Maine*—Maine Rev. Stat. Annot., title 14, sec. 156 (effective October 1, 1969).

*Minnesota*—Minn. Stats. (1971), sec. 604.01 (1) (effective July 1, 1969).

are four states which have taken modified views of comparative negligence.[7]

By far the more logical and just rule of comparative negligence to supplant the harsh common-law doctrine of contributory negligence is the doctrine known as "pure comparative negligence." Under this doctrine, every injured person recovers the amount of his damages reduced by the percentage of his causal negligence and every person causing damage to another is ultimately liable only for the percentage of negligence apportioned to him. It may be that under the rule applicable to joint tort-feasors, one tort-feasor is liable for the total damage to which a plaintiff is entitled and under the pure comparative negligence doctrine as under other comparative doctrines one defendant may initially pay more than his proportionate share; nevertheless, he should then have a right of contribution based on comparative negligence to recover the overpayment. *See Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105. The pure comparative negligence doctrine has been adopted by five jurisdictions.[8]

*Oregon*—Ore. Rev. Stats. (1973), sec. 18.470 (effective Sept. 9, 1971).

*North Dakota*—Laws of North Dakota (1973), ch. 78, sec. 1, sec. 9–10–07, approved March 13, 1973.

*Utah*—Utah Code Annot. (1953), sec. 78–27–37 (1973 pocket part).

[7] Nebraska and South Dakota have adopted the "slight-gross" variation of comparative negligence (Neb. Rev. Stats. 1943), sec. 25–1151; South Dakota Compiled Laws (1967), sec. 20–9–2); Georgia has engrafted last clear chance onto a "not as great as" formulation of comparative negligence (Ga. Code Annot., secs. 94–703 and 105–603; *Conaway v. McCrory Stores Corp.* (1950), 82 Ga. App. 97, 60 S. E. 2d 631) and Tennessee has engrafted last clear chance onto a "remote contributory negligence" rule. *Hansard v. Ferguson* (1939), 23 Tenn. App. 306, 132 S. W. 2d 221.

[8] *Puerto Rico*—PR Laws Annot., title 31, sec. 5141.

*Mississippi*—Miss. Code Annot. (1972), title 11, sec. 11–7–15.

It is true most states have adopted some form of comparative negligence by statute, but the state of Florida has recently adopted the pure form of comparative negligence by court rule,[9] and New York has adopted by court rule the pure form of comparative negligence for the purpose of contribution,[10] although New York has not expressly applied the doctrine to the primary plaintiff and defendant relationship.

If the Wisconsin legislature is bent upon adopting some form of no-fault liability, then as a part of that legislative plan it should adopt pure negligence for the gaps left by the no-fault plan. Certainly if it is good public policy for a plaintiff regardless of his fault to recover up to a limited amount of damages for certain injuries, it is just as logical, if not more so, that he recover for all his injuries to their full amount reduced by the percentage of his negligence which caused such injuries. I would suggest to the legislature that, in the absence of this court action, it adopt the pure form of comparative negligence for the area beyond which the no-fault provision of its plan does not grant relief. This is what Rhode Island has recently done in adopting a no-fault plan.[11] But I believe this court has the power to adopt the doctrine of pure comparative negligence for all negligence cases and should do so;[12] if the legislature desires to go

*Rhode Island*—R. I. Gen. Laws (1969), sec. 9–20–4.

*Florida*—*Jones v. Hoffman* (Fla. Dist. Ct. App. 1973), 272 So. 2d 529.

*Washington*—Wash. Leg. Serv., Laws of 1973, ch. 138 (Senate Bill No. 2045) (effective April 1, 1974), sec. 1.

[9] *Jones v. Hoffman, supra,* note 8.

[10] *Dole v. Dow Chemical Co.* (1972), 30 N. Y. 2d 143, 282 N. E. 2d 288; *Kelly v. Long Island Lighting Co.* (1972), 31 N. Y. 2d 25, 286 N. E. 2d 241.

[11] R. I. Gen. Laws, sec. 9–20–4 (1969).

[12] No major legal obstacle prevents the courts from adopting a comparative negligence rule. *See* Prosser, *Torts* (3d ed.), p. 445;

60

farther and change it to provide for recovery regardless of fault in some instances, it, of course, has such power.

Keeton, *Creative Continuity in the Law of Torts*, 75 Harv. L. Rev. (1962), 463, 506, 509.