**Bud Wayne DAVIS, Appellant,**

**Suzanne M. Davis, his wife, Plaintiff,**

v.

**FARMERS UNION GRAIN TERMINAL ASSOCIATION, Respondent.**

**No. 48633.**

Supreme Court of Minnesota.

March 23, 1979.

---

Courtney, Gruesen & Petersen and James J. Courtney, III, Duluth, for appellant.

Donovan & Harper and Charles T. Barnes, Duluth, for respondent.

## PER CURIAM.

Plaintiff, together with his wife, brought this action to recover under Wisconsin's so-called "safe-place statute" for damages allegedly sustained when he slipped or fell on an outdoor, wooden staircase at defendant's grain terminal in Superior and injured his back. The trial court directed a verdict for defendant at the close of plaintiff's case. This appeal is from the order denying plaintiff's post-trial motion for a new trial. We affirm.

The statute, Wis.Stat.1971, § 101.11, provides in pertinent part:

"(1) Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters [1] thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe."

Plaintiff alleged that defendant violated the statute because it allowed grain and grain dust to accumulate on the staircase steps, causing them to become slippery and dangerous; allowed the steps to become worn and rounded, making them slippery; failed to furnish a safe place for plaintiff to perform his duties; failed to install proper lighting; failed to warn plaintiff of hazards; and failed properly to design or construct the premises. Plaintiff's proof, however, was mainly directed at establishing the first allegation.[2]

The record discloses the following evidence: Plaintiff was employed by a vending machine firm to deliver food to vending machines in the lunchroom at defendant's terminal, which he could reach only by using the staircase in question. The staircase was approximately 60 feet from the building where grain was dumped from trucks onto a conveyor belt, an operation which, in spite of use of equipment designed to prevent spreading, resulted in the escape of some grain and grain dust into the area. The dust would often be deposited on the steps and was slippery when wet. Plaintiff,

---

1. "Frequenters" are persons other than employees who are at the place of employment under circumstances other than as trespassers. Wis.Stat. 101.01(2)(e).

2. Plaintiff offered two photographs of the stairway, taken at an unspecified time in 1975, to show that the steps were worn and had dust on them. The court properly sustained objections to the photographs on the ground that they were remote in time and that it had not been established that the condition shown on the photographs existed in November 1973. The trial court also refused to let plaintiff ask Leonard Lundeen, an adverse witness, if, in his opinion, concrete steps would have been safer. See, *Gross v. Denow*, 61 Wis.2d 40, 212 N.W.2d 2 (1973). Plaintiff introduced no expert testimony to show the wooden steps were defective.

during the previous month, had made deliveries to the terminal without incident, although rain or snow sometimes made the steps wet.

Plaintiff testified that on November 21, 1973, a day of intermittent rain and snow, he arrived at the terminal about dusk, loaded a two-wheel cart with cans of soup from his van, and began to push the cart down the steps. Although there were handrails on the staircase, plaintiff testified that he had to use both of his hands to guide the cart. He said that there was grain dust on the steps; that they were wet and slippery; that he started down them and his feet suddenly went out from under him; and that he did not know where he slipped or if he actually fell, because he grabbed for the railing. Plaintiff immediately felt a sharp, stabbing pain in his back and claims he sustained serious injury.

On cross-examination, plaintiff said that "to the best of his knowledge" he fell but could not give an exact answer whether he did; that he could see what he was doing; that he believed he was close to the top and "probably to the right" on the steps when he slipped; and that he did not know if he had observed the steps. Plaintiff also said that he had previously encountered the same conditions when it rained. He admitted that testimony he had given at a deposition almost 2 years earlier was accurate. At that time, plaintiff said that he did not see grain dust on the steps the day he fell.

Leonard Lundeen, a superintendent at the terminal, called by plaintiff as an adverse witness, testified that there could have been grain dust on the steps because dust would pervade the area and on a windy day might be blown about. He agreed that when wet, dust becomes slippery. Lundeen said that in 1973 all elevators had some dust and that defendant's equipment for preventing its spread was like equipment used in other elevators and complied with state and Federal regulations. He also said that employees removed snow from the steps but that dust usually was blown away by the wind. Lundeen had never seen the steps in a condition that caused him to direct someone to clear them, except during a snowstorm.

We conclude that the trial court correctly granted defendant's motion for a directed verdict. We said in *Lakehead Constructors, Inc. v. Roger Sheehey Co.*, 304 Minn. 175, 229 N.W.2d 514 (1975), that the standard to be used in determining whether a verdict should be directed in a negligence action is whether reasonable men could differ as to the question of negligence on the part of defendant or contributory negligence on the part of plaintiff.

Viewing the evidence in the light most favorable to plaintiff, it cannot be said he proved the allegation that accumulations of grain caused him to slip or fall. Accepting his testimony and that of Lundeen, it may nevertheless be inferred that there was grain dust in the area and that some may have been deposited on the steps. Such evidence does not prove a violation by defendant of a common-law duty toward plaintiff in light of the nature of grain elevators. Similarly, the evidence viewed most favorably to plaintiff requires the conclusions that plaintiff needed no warning of the condition he might have encountered on the steps and that plaintiff was negligent in failing to observe the condition and in failing to use the handrail.

Plaintiff urges, however, that the statute imposed a higher duty on defendant than that of ordinary care. The Wisconsin Supreme Court has indeed construed Wis.Stat. 101.11 to do so, but at the same time it has defined the duty imposed by the statute in light of the definition of "safe" in § 101.-01(2)(g). That provision defines "safe" and "safety" as used in § 101.11 to mean—

" * * * *such freedom from danger to the life, health, safety or welfare of employees of frequenters, or the public,* or tenants, or firemen, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the *nature of the employment,* place of employment, or public building, *will reasonably permit.*" (Italics supplied.)

In *Gross v. Denow*, 61 Wis.2d 40, 46, 212 N.W.2d 2, 6 (1973), the court stated:

"Under this statute an employer has a duty to make the 'place of employment' as safe as the nature of the employment will reasonably permit, a higher duty than that of ordinary care. The statute does not make the employer an insurer. The duty set by the statute is not breached merely because the place could be made safer. The employer's duty to furnish a safe place is an absolute one, but the term 'safe' is relative, not absolute. As this court has said, 'The point is simply that the statute recognizes a "rule of reason." ' What is a safe place depends upon the facts and conditions present, and the use to which the place 'was likely to be put.' "

Applying the statute so construed to the facts before us, proof permitting the inference that defendant's premises had as much grain dust, and no more, than other elevators complying with state and Federal regulations is plainly not sufficient to establish a violation of the statute.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.