PESCHEL, Appellant, vs. KLUG and another, Respondents.

*December 4, 1919—January 16, 1920.*

*Negligence: Falling of piled timber: Res ipsa loquitur: Question*
*for jury.*

1. Where an appliance under the management of defendant in-
   flicts injury by reason of an abnormal and unexpected move-
   ment which could not have taken place had there been proper
   care exercised in its management or supervision, the abnor-
   mal action, in the absence of satisfactory explanation, affords
   evidence of lack of such care.
2. Where three timbers, weighing 1,600 pounds each, were piled
   parallel with the line of an alley, and the top timber fell and
   injured one frequenting the alley, the falling of the timber,
   in the absence of satisfactory explanation, afforded evidence
   of lack of care in piling; and the question whether the timbers
   fell because of insecure piling, or whether the fall resulted
   from the swerving of a truck against them, is for the jury.

APPEAL from a judgment of the circuit court for Mil-
waukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

Personal injuries.   In November, 1916, the plaintiff was
a laborer working for the manufacturing firm of Linde-
mann & Hoverson at their plant in Milwaukee.   On the day
of the accident in question (November 15th) he was cart-
ing lumber to be distributed to various points in the plant on
a hand truck, in which operation he was assisted by a helper
who pushed behind.   The truck and its load weighed about
600 pounds.   It had an iron handle in front by which the
plaintiff pulled it.   The defendants were contractors en-
gaged in the construction of a large building for Lindemann
& Hoverson, located ten to twenty-five feet north of a
twelve foot east-and-west alley running through the yard.
Several days before the accident *Klug* and *Smith* had left
three large pine timbers, sixteen feet long and fourteen by
sixteen in breadth and thickness and intended to be used in
their building operations, lying along the north side of the
alley, two below and one above.   The timbers were practi-

cally parallel with the line of the alley and lay on the ground just north of the alley, but extending perhaps a few inches into the alley. The alley itself was paved with concrete blocks, and several witnesses testified that it had holes and ruts worn in it between the blocks. The lower timbers were laid upon some loose bricks and a piece of timber so as to keep them from dampness, and the other timbers lay on top of them. Just before the accident happened the plaintiff and his helper, with the loaded truck, were proceeding eastward through the alley, as was the custom, and when they reached a point south of and immediately adjacent to the three timbers were obliged to stop and wait for the unloading of some joists from a wagon in the alley just to the eastward. The wagon was unloaded in a few minutes and was backed out of the way. At this point in the transaction the evidence becomes contradictory. The plaintiff testified that as he was still standing before his truck looking southward and before he attempted to move the truck, the top timber of the three fell from some cause unknown to him and broke his leg. His helper testified on direct examination that he and *Peschel* were standing still at the time the timber fell and that the truck was standing still, but on cross-examination he testified that "after the wagon passed, *Peschel* and I took hold of the truck, I was on the rear and he was in the front, and the truck moved about a foot before the accident happened." He also testified that the timber which fell was lying on top of the other timber on a slant, but there was no other testimony to this effect. On the other hand, three apparently disinterested eye-witnesses relate an entirely different story. Two men named Lussa and Domoris, who were at the time in the employ of *Klug* and *Smith*, were helping to unload the joists from the wagon before mentioned at the time the plaintiff stopped with his truck near the timbers. Both of these men saw the accident, and both testify in effect that after the wagon moved out of the way the plaintiff and his

helper started to move the truck and couldn't start it, so Domoris went to the back of the truck and helped push, and it moved forward four or five feet, and one of the wheels ran into a hole or rut four or five inches deep between the concrete blocks, and that in the struggle to right the truck the front axle and handle swung around against the lower timber, causing the upper timber to fall over on the plaintiff. One Riese, the defendants' foreman, also saw the accident and gives the same account of it. These three witnesses also agree that the timbers had been there several days, perhaps a week, and that they lay level and solid. Domoris helped to put them there originally, and he and other employees walked over them in going to and from lunch.

A verdict for the defendants was directed, and from judgment thereon the plaintiff appeals.

*William A. Schroeder* and *Horace B. Walmsley,* both of Milwaukee, for the appellant.

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

WINSLOW, C. J.    Our statute provides (sec. 2394—48) that every employer shall furnish a place of employment which shall be safe for employees therein "and for frequenters thereof," and the appellant's contention is that, in view of the testimony of the plaintiff and his helper that the truck had not moved or touched the timbers before the topmost timber fell, there was a question for the jury as to whether the timbers did not fall because improperly and insecurely piled, or, in other words, because of a violation of this safe-place statute, it being undisputed that the plaintiff was a "frequenter" of the place though not an employee of *Klug* and *Smith.* It is an undisputed fact that the timbers were placed there by the employees of *Klug* and *Smith* for ultimate use in the building which they were con-

structing, and it seems clear that *Klug* and *Smith* had the right to decide, and did in fact decide, where they should be placed and how they should be piled.   It is a principle quite well established that where a machine or appliance, under the management of defendant, inflicts an injury by reason of an abnormal and unexpected movement which could not have taken place had there been proper care exercised in its management or supervision, the very fact of the abnormal action, in the absence of satisfactory explanation, affords evidence of lack of such care.   *Cummings v. Nat. F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 75 N. W. 176.

No reason is perceived why the principle does not apply to this case.   The timbers were piled on the margin of the alley by the defendants in the prosecution of their business and were in their care.   It was their duty under the statute to so pile them that the alley could be safely used in the usual and ordinary manner by their employees and other frequenters.   If the timbers fell on such an employee or frequenter without the application of force or violence, that fact itself would necessarily be evidence of unsafe piling. There was evidence, which cannot be said to be incredible, that such was the case here; hence the question as to whether the timbers were piled in such an insecure way that they fell on the plaintiff in obedience to the laws of gravitation and without other or adequate cause was a question for the jury.

It will not do to say that, because three witnesses testified that the front wheels and handle of the truck swung around and struck the timbers, the fall of the top timber is satisfactorily explained and the principle of *res ipsa loquitur* does not apply.   In the first place, the plaintiff and his helper testify directly that the truck did not touch the timbers before the fall of the top timber, and we cannot say that this testimony is incredible or so at variance with undisputed physical facts as to leave no jury question.   In

the second place, if it be conceded that the wheel or handle of the truck did strike the timbers, the questions whether some such an occurrence ought reasonably to have been anticipated by the defendants, and, if so, whether in view of such anticipation the piling was insecurely done, would still remain. It is an undisputed fact that the timbers were large and heavy timbers weighing from 1,600 to 1,800 pounds each, and it is mere matter of common knowledge that it would take a blow of great force to make the top one fall if they were piled level and on a secure foundation. It is plainly a jury question in this case whether the blow alleged to have resulted from the slewing of the truck. would have been sufficient to cause the timber to fall had the piling been properly done.

The jury questions at the close of the evidence may be summarized as follows: (1) Were the timbers piled so insecurely that the alley in their vicinity was unsafe for employees and frequenters using the alley in the ordinary and usual manner? (2) If "Yes," then did the top timber fall solely because of such insecure piling, or did it fall because of the insecure piling and a blow from the truck combined? State which. (3) If from the two causes combined, then ought defendants to have anticipated, when the timbers were piled, that such an event as the blow from the truck might probably happen?

No claim of contributory negligence apparently was made on the first trial, but if such claim be made upon the new trial it may become necessary to submit another question covering that subject.

*By the Court.*—Judgment reversed, and action remanded for a new trial.