UHRMAN and another, Respondents, vs. CUTLER-HAMMER, INC., Appellant.

*October 8—November 5, 1957.*

For the appellant there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Clayton R. Hahn* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn.*

For the respondent Joseph Uhrman there was a brief by *Hayes & Hayes* of Milwaukee.

For the respondent Employers Mutual Liability Insurance Company of Wisconsin there was a brief by *George D. Young,* attorney, and *Theodore L. Priebe* of counsel, both of Milwaukee, and oral argument by *Mr. Priebe.*

WINGERT, J. The defendant-appellant challenges the trial court's findings that (1) the premises were not as free from danger as the nature of the employment would reasonably permit, (2) defendant had actual or constructive notice of such unsafe condition, and (3) plaintiff Uhrman was free from negligence in respect to the damage incurred by him. Our conclusion is that all of the findings have adequate support in the evidence, and that there was no error in rendering judgment for the plaintiff.

1. *Place unsafe.* The area where the accident occurred was a place of employment and plaintiff was a frequenter thereof. Sec. 101.06, Stats., required the place to be "safe" for frequenters. "Safe" means "such freedom from danger . . . as the nature of the employment, place of employment, or . . . will reasonably permit." Sec. 101.01(11).

The testimony of Uhrman is undisputed, that the ramps were nested against the wall, with the thin end on the ground, that they were three feet from his truck, that he did not bump them or touch them and that he had "lots of room there." The trial court's written decision shows that he believed that testimony. It is not so inherently incredible that we can say the court was wrong.

In that situation, the case is ruled by *Peschel v. Klug,* 170 Wis. 519, 175 N. W. 805, where three large timbers were piled at the side of an alley, and one of them fell on plaintiff's leg as plaintiff was standing beside them. In reversing a directed verdict for the defendants, this court said (p. 522):

"The timbers were piled on the margin of the alley by the defendants in the prosecution of their business and were in their care. It was their duty under the statute to so pile them that the alley could be safely used in the usual and ordinary manner by their employees and other frequenters. *If the timbers fell on such an employee or frequenter without the application of force or violence, that fact itself would necessarily be evidence of unsafe piling.* There was evidence, which cannot be said to be incredible, that such was the case here; hence the question as to whether the timbers were piled in such an insecure way that they fell on the plaintiff in obedience to the laws of gravitation and without other or adequate cause was a question for the jury." (Italics ours.)

So here, the undisputed evidence that the ramps fell on Uhrman without his having bumped them warranted the court in finding that they were stacked in an unsafe way. From the description of the ramps and loading dock, and in the absence of any evidence to the contrary, the court could also properly find that the nature of the place and employment would have permitted a safer placement of the ramps.

2. *Notice to the employer.* The finding that defendant had actual or constructive notice of the unsafe condition presents a closer question. Such notice is an essential element of liability to a frequenter. *Williams v. International Oil Co.* 267 Wis. 227, 230, 64 N. W. (2d) 817.

Constructive notice of course is neither notice nor knowledge, but a mere shorthand expression. We say a person has constructive notice of something when for the promotion of sound policy or purpose he is to be treated as if he had actual notice, whether or not he had it in fact. *Schoedel v. State Bank of Newburg,* 245 Wis. 74, 76, 13 N. W. (2d)

534. In the present case we think the evidence was sufficient to warrant the trial court in placing defendant in that category with respect to the unsafe stacking of the ramps.

The ramps were frequently used. The loading dock was a busy place, and trucks were in and out all day. At least one of defendant's trucks used the ramps almost daily, and visiting trucks of other operators also used them whenever necessary to bring the level of the truck bed to that of the loading platform. Defendant's warehouse employees asked the truck drivers to stand the ramps against the building and out of the way of the doors when not in use. The ramps were heavy and awkward objects, so shaped that they could be unstable if stacked carelessly, and of such weight that they could cause injury if they should fall.

In that situation it was incumbent upon defendant to take some minimum precaution to see that the ramps were not so placed as to create a hazard. This might be done by instruction to the truckers as to how to stack them safely, or warning to use care not to place them in an unsafe condition, or by inspection from time to time to see that they were safely placed. There is no evidence that defendant did any of these things, or indeed did anything at all to protect employees and frequenters in the area in question. Therefore defendant cannot be heard to assert lack of notice of the unsafe condition of the ramps on the particular occasion of Uhrman's accident. It was charged with constructive notice of the condition resulting from careless compliance with directions given by its own employees, in circumstances where it should have taken precautions to avoid or detect hazards, but took none.

It is argued that the warehouse employees had no authority from defendant's management to give instructions to the truckers. That does not relieve defendant from responsibility for what they did. There is no evidence that the practice was forbidden. The employees in question were in apparent

charge of loading and unloading operations, they checked goods in and out, stamped freight bills, and the like. Truckers would naturally and properly comply with their requests as to such matters as stacking the ramps after use. Thus their acts in the premises were the acts of defendant. An employer cannot permit its rank-and-file employees to do things habitually in the course of their work that are very natural and reasonably to be anticipated, and then escape responsibility for their carelessness in the premises on the ground that they were not authorized to do such things.

Defendant invokes the principle applied in *Boutin v. Cardinal Theatre Co.* 267 Wis. 199, 204, 205, 64 N. W. (2d) 848, that there can be no liability to a frequenter for omission with respect to repair or maintenance without proof that the defect had existed so long that a vigilant owner would have discovered and repaired it before the accident. The ruling in that case must be read in its context. There the dangerous condition resulted from the surreptitious theft of a cushion from a theater seat, whereas in the present case the defect resulted directly from the negligent performance of a request attributable to the defendant. The owner of premises is generally held to more diligence in guarding against faulty performance of his own requests or instructions than in detecting the wrongful acts of unauthorized third persons.

3. *Contributory negligence.* Defendant points out that Uhrman selected the door at which to unload, three feet from the ramps, that he saw the ramps against the building when he came in, that their position was as readily observable to him as to defendant's employees, and that he got down on the ground on the side of his truck nearest the ramps in order to draw the tarpaulin, when he could have done it from the loading platform. It is argued that Uhrman had as much notice of the unsafe condition as the defendant could have had, and was chargeable with as great a degree of negligence as could be attributed to defendant

The trial court could have inferred from the testimony that the insecurity of the ramps as they were stacked was not readily apparent at casual glance. That fact does not relieve defendant from responsibility, for the reasons already stated, but it has an important bearing on the appraisal of Uhrman's conduct. His job was to unload his truck, not to inspect the surrounding area for obscure hazards. We cannot say that he was negligent as a matter of law in giving the ramps only a glance before parking three feet from them and taking a position in the intervening space to draw the tarpaulin.

*By the Court.*—Judgment affirmed.