KORENAK and wife, Respondents, v. CURATIVE WORKSHOP ADULT REHABILITATION CENTER, Appellant.

*No. 607 (1974). Argued November 26, 1975.—*
*Decided January 6, 1976.*
(Also reported in 237 N. W. 2d 43.)

For the appellant there was a brief by *James P. Brennan* and *Simarski, Goodrich, Brennan & Stack* of Milwaukee, and oral argument by *James P. Brennan*.

For the respondents there was a brief by *Larry B. Brueggeman* and *Goldberg, Previant & Uelmen, S. C.* of Milwaukee, and oral argument by *Larry B. Brueggeman*.

DAY, J. The order appealed from overrules the defendant's demurrer to two causes of action set forth in the plaintiffs' complaint. The question is whether the com-

plaint sets forth facts sufficient to constitute a cause of action. The complaint alleges that Joseph Korenak, an adult, was a student at the defendant Curative Workshop Adult Rehabilitation Center ("Center"), a Wisconsin corporation located in Milwaukee. The Center held itself out to the public as an educational institution for the purposes of vocationally rehabilitating members of the public, and was engaged in the business of educating, instructing, and teaching occupations and job skills to enrolled members of the public. Also enrolled at the Center were two individuals, Edward E. Graun, and George S. McGowan, both of whom, the complaint alleges, "had a bellicose nature" and "a history and record of violent conduct, aggressiveness, uncontrollability, dangerous conduct, violent crimes, exhibiting dangerous proclivities, being argumentative and inflicting injuries on other people. . . ." The complaint further alleges that the Center knew or should have known of these activities when the Center accepted them as students; that while they were students they individually and in concert engaged in acts of violence and conduct injurious to others, including acts against Mr. Korenak in which they "abused, harassed, tormented, taunted, insulted, threatened the life of, stole property from and destroyed property of" Mr. Korenak; that the Center had been informed by Mr. Korenak of these attacks on numerous occasions; and that on or about the 11th day of March, 1971, Graun, in conspiracy with McGowan, struck Korenak with a pipe in the region of his left eye, causing Mr. Korenak to sustain severe injuries, including the loss of his left eye. The complaint further alleges that Graun has been criminally prosecuted, convicted, and incarcerated in connection with the assault.

The complaint sets forth two causes of action. The first alleges negligence on the part of the Center in accepting Graun and McGowan as students in view of their records;

failing to warn Mr. Korenak of their records; allowing them to associate with Mr. Korenak after being informed of their previous attacks upon him; in failing to supervise Graun and McGowan, or provide protection for Mr. Korenak in view of their previous records and attacks upon him; and failing to provide a supervisory staff of sufficient size or skill to supervise the students enrolled in the course. The second cause of action alleges that the Center was a "place of employment" within the meaning of the safe-place statute, sec. 101.11, Stats., and that Mr. Korenak was both an "employee" and a "frequenter," as defined for purposes of the safe-place statute in sec. 101.01. In both causes of action, Mr. Korenak seeks damages for his medical expenses, lost earnings, pain and suffering, and permanent disabilities and disfigurements. His wife, Marjorie Korenak, seeks additional damages for past and future losses of society and companionship.

The overruled demurrer was to the entire complaint, and not directed at each cause of action separately. We, however, reach differing results in considering the two causes. Does the first cause of action state a claim in ordinary negligence? We conclude that it does, because the allegations make out a breach of the general duty of an owner or occupier of land to exercise ordinary care to prevent injuries on his premises. Does the second cause of action state a claim under the safe-place statute? We conclude that it does not, since the safe-place statute applies only to physical conditions of the premises, and does not contemplate negligence in permitting acts such as those complained of here to occur.

We have previously held that an educational institution handling adult students (Carthage College) owes a duty of ordinary care to protect those students from the known negligent conduct of other persons:

". . . the invitor, while not an insurer, does owe a duty of ordinary care to an invitee not only as to the

physical condition of the premises but also as to the known hazardous conduct of other persons upon the premises." *Stamberger v. Matthaidess* (1967), 37 Wis. 2d 186, 191, 155 N. W. 2d 88.

In this case we extend this principle to cover intentional torts committed by one student upon another.

In prior cases involving business establishments, we have held that the duty of the operator of the premises, with respect to intentional torts committed by one patron upon another, is a duty of exercising reasonable care to discover that tortious acts were being committed or about to be committed, and adequately warn his customers or restrain the attacker. *Weihert v. Piccione* (1956), 273 Wis. 448, 455, 78 N. W. 2d 757 (restaurant); *Radloff v. National Food Stores* (1963), 20 Wis. 2d 224, 235, 121 N. W. 2d 865, 123 N. W. 2d 570 (grocery store); *Kowalczuk v. Rotter* (1974), 63 Wis. 2d 511, 513, 217 N. W. 2d 332 (tavern). The present case does not fall within this class because the student-school relationship is not of the temporary sort that arises between, for example, a restauranteur and the customer who happens to be in the establishment when the disturbance occurs. The student-school relationship is both more extensive and more extended. It involves many factors, such as the history of warnings alleged here, which would not normally arise in the case of a typical business establishment.

There are significant questions of public policy raised in this case that cannot be decided on demurrer. The Center allegedly trains the occupationally disabled in job skills suitable to their abilities, but also apparently seeks to train those with records of violent criminal activity. The importance to society of channeling those previously convicted of crimes into useful and acceptable paths cannot be lightly cast aside. But where trainees with known and demonstrated tendencies to violence are mixed with other individuals, especially those who are suffering

from occupational handicaps, is there not some duty to take reasonable steps to protect the others? The type of care required of the school, considering the number of students, the nature of their activities, and the physical situation of the Center, cannot be determined at this stage of the proceedings.

The Center argues that there can be no liability unless Mr. Korenak was in its custody and relying on its protection, and that he was not. The Center relies almost entirely on Restatement 2d, *Torts,* pp. 122–130, secs. 315, 319, and 320, which deal with the duties of a custodian to control the person in custody.[1] Custody could very well

[1] "TITLE A. DUTY TO CONTROL CONDUCT OF THIRD PERSONS

"§315. General Principle

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b) a special relation exists between the actor and the other which gives to the other a right to protection."

. . .

"§319. Duty of Those in Charge of Person Having Dangerous Propensities

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

"§320. Duty of Person Having Custody of Another To Control Conduct of Third Persons

"One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

"(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

be a factor in a school involving young or disabled persons, but in the adult school situation made out in the complaint, it is not. While we agree that Mr. Korenak was not in custody, this does not excuse the landowner from liability under the principles discussed above. See also Restatement 2d, *Torts*, p. 126, sec. 318.[2]

The Center directs our attention to *Fitzgerald v. Ludwig* (1968), 41 Wis. 2d 635, 165 N. W. 2d 158, an attractive nuisance case in which the court found no liability on the part of a contractor for injury received near a construction site when a child threw a loose shingle injuring another child. The case is not in point. It merely held that the presence of shingles at a construction site could not violate the contractor's duty to avoid creation of dangerous conditions. In the present case, by contrast, the Center's alleged failure to restrain Graun and McGowan after learning of their behavior might well violate its duty to Mr. Korenak of ordinary care under the circumstances.

The Center also cites a case in the lower California courts, *Tarasoff v. Regents of the Univ. of Calif.* (Ct. of App. 1973), 33 Cal. App. 3d 275, 108 Cal. Rptr. 878. In that case a psychologically disturbed individual had

"(b) knows or should know of the necessity and opportunity for exercising such control."

[2] "TITLE A. DUTY TO CONTROL CONDUCT OF THIRD PERSONS

"§318. Duty of Possessor of Land or Chattels to Control Conduct of Licensee

"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

"(a) knows or has reason to know that he has the ability to control the third person, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

been released from medical care after threatening to kill a certain girl whom he did murder two months later. The case is authority only that the hospital had no obligation to warn the intended victim of the threat against her in the absence of some particular relationship between the hospital and the intended victim. This is different from the obligation of a landowner to exercise ordinary care to protect persons on his premises from the known proclivities and activities of others.

We hold that the demurrer to the first cause of action was properly overruled.

The plaintiff claims that he was an "employee" or a "frequenter," and that the Center was a "place of employment," and therefore that this case falls within the safe-place statute. This court has specifically held that a vocational school is not a place of employment. *Kirchoff v. City of Janesville* (1949), 255 Wis. 202, 38 N. W. 2d 698. From the facts as set forth in the complaint, the Center here is not a place of employment, and Mr. Korenak is not an employee. Even though he might be classified as a "frequenter," *Mlynarski v. St. Rita's Congregation* (1966), 31 Wis. 2d 54, 59, 142 N. W. 2d 207, it is clear that activities conducted on the premises do not fall within the protection of the safe-place statute, and that it is only to unsafe physical conditions that the statute applies. *Deaton v. Unit Crane & Shovel Corp.* (1953), 265 Wis. 349, 352, 353, 61 N. W. 2d 552; *Gross v. Denow* (1973), 61 Wis. 2d 40, 47, 212 N. W. 2d 2.

As to the second cause of action, therefore, the demurrer is sustained.

*By the Court.*—Order overruling demurrer affirmed in part, and reversed in part, and cause remanded for further proceedings consistent with this opinion. Costs shall be awarded to respondent.