STEFANOVICH, and others, Plaintiffs-Respondents, v.
IOWA NATIONAL MUTUAL INSURANCE COMPANY, and
another, Defendants-Appellants.

Supreme Court

*No. 76–236. Submitted on briefs November 1, 1978.—
Decided November 28, 1978.*
(Also reported in 271 N.W.2d 867.)

For the appellants the cause was submitted on the briefs of *John M. Swietlik, Russell M. Ware* and *Kasdorf, Dall, Lewis & Swietlik* of Milwaukee.

For the respondents the cause was submitted on the brief of *John M. Tye* and *Goldberg, Previant & Uelmen, S.C.,* of Milwaukee.

DAY, J. This is an appeal from that portion of an order of the circuit court for Waukesha County entered October 13, 1976, which denied the motion of the defendants, Iowa National Mutual Insurance Company and Middle West Manufacturing Company (hereinafter Middle West), to dismiss the third cause of action of the plaintiff's complaint on the grounds that this third cause of action did not state a claim upon which relief could be granted.

The issue raised on this appeal is:

Do allegations that a crane operator loaded steel rings on the bed of a truck at defendant's loading dock in such an unstable position that they slipped during loading, injuring plaintiff who was assisting the loading operation, state a claim under the Wisconsin Safe Place Statute?

We hold the allegations do not state such a claim and accordingly we reverse.

The complaint of the plaintiff, John T. Stefanovich, alleges that the defendant, Middle West, operated and maintained a manufacturing facility, warehouse and loading dock at its place of business where, among other things, Middle West manufactured steel rings. These rings were loaded by Middle West onto the beds of trailer trucks sent by purchasers of the steel rings to pick them up.

On February 3, 1973, Mr. Stefanovich drove his employer's flatbed truck to one of Middle West's loading docks to pick up thirty-two steel rings. The rings were approximately four feet in diameter, nine inches high, and one inch thick. Each ring weighed approximately 400 pounds. These rings were loaded onto the truck by an overhead crane.

The complaint alleged that Stefanovich expressed doubt to Middle West's crane operator that all thirty-two steel rings could be safely loaded onto the bed of the truck. The crane operator assured him that the rings could be safely loaded by "placing one steel ring flat down on the bed of the truck and flush against one side and by placing a second steel ring against the other side of said truck, leaving one end of the second steel ring resting upon the edge of the first steel ring, thus stacking said steel rings in a staggered formation."

Stefanovich alleged that he then climbed into the bed of the truck "for the purpose of lending assistance to the loading procedure," and the crane operator proceeded to begin loading the truck in the manner described above. After about ten steel rings had been loaded, and while the loading process was still proceeding, one of the rings began to shift in the direction of the plaintiff. Stefanovich grabbed the ring and tried to guide it away from himself. As he did so, he allegedly suffered back injuries

which required medical treatment and hospitalization and which caused pain and suffering, lost wages, and a future disability.

Stefanovich brought suit alleging three causes of action: (1) negligence; (2) strict liability; and (3) violation of sec. 101.11, Stats. 1975, known as the safe-place statute.

The defendants moved the court to dismiss the second and third causes of action of the plaintiff (strict liability and violation of the safe-place statute) on the ground that they failed to state a claim upon which relief may be granted. On October 13, 1976, defendants' motion to dismiss the strict liability cause of action was granted, but the motion to dismiss the safe-place statute cause of action was denied. The court concluded that the manner in which Middle West's crane operator stacked the steel rings in the truck constituted a dangerous condition existing in a place of employment. The defendants appeal from the denial.

A motion to dismiss for failure to state a claim upon which relief can be granted under sec. 802.06(2), Stats., serves the same function formerly served by a demurrer. In ruling on a demurrer, a complaint should be liberally construed with a view to achieving substantial justice and a complaint is entitled to all reasonable inferences in its favor. In testing the complaint, the trial judge must assume that the facts pleaded are true. *Riedy v. Sperry*, 83 Wis.2d 158, 166, 265 N.W.2d 475 (1978).

In his complaint, John Stefanovich alleged that he was injured during the loading of steel rings onto a flatbed truck. The first cause of action alleged that Middle West was negligent in the manner the rings were stacked on the truck, in failing to warn plaintiff of the danger of such stacking, in failing to package the steel rings for shipment, in failing to install safety features on the rings

to prevent shifting during loading, and in assuring the plaintiff that the steel rings could be safely loaded onto the truck in the staggered manner previously described. This negligence cause of action is not before the court.

In his safe-place statute cause of action, Stefanovich re-alleged exactly those facts asserted in the negligence cause of action and then alleged that Middle West violated sec. 101.11 Stats. 1975.

Sec. 101.11, Stats., provides:

"101.11 **Employer's duty to furnish safe employment and place.** (1) Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

"(2) (a) No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employes and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe.

"(b) No employe shall remove, displace, damage, destroy or carry off any safety device or safeguard furnished and provided for use in any employment or place

of employment, nor interfere in any way with the use thereof by any other person, nor shall any such employe interfere with the use of any method or process adopted for the protection of any employe in such employment or place of employment or frequenter of such place of employment, nor fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employes or frequenters.

"(3) This section applies to community-based residential facilities as defined in s. 50.01 (1)."

The Wisconsin safe-place statute provides that it is an employer's duty to provide safe employment, premises and equipment for the protection of his employees and frequenters. This court has held that the safe-place statute does not make the employer an insurer of the safety of a frequenter on the premises. Rather, the statute deals with unsafe *conditions* of the employer's premises and not with negligent or inadvertent *acts* of employees or *activities* conducted on the premises. *Deaton v. Unit Crane & Shovel Corp.*, 265 Wis. 349, 352–353, 61 N.W.2d 552 (1953); *L. G. Arnold, Inc. v. Industrial Comm.*, 267 Wis. 521, 525–526, 66 N.W.2d 176 (1954); *Gilson v. Drees Brothers*, 19 Wis.2d 252, 257, 120 N.W.2d 63 (1963); *Gross v. Denow*, 61 Wis.2d 40, 47, 212 N.W.2d 2 (1973); *Korenak v. Curative Workshop Adult Rehabil. Ctr.*, 71 Wis.2d 77, 84, 237 N.W.2d 43 (1976); *Barth v. Downey Co., Inc.*, 71 Wis.2d 775, 779–780, 239 N.W.2d 92 (1976).

In *Deaton, supra*, the plaintiff was injured at a construction site where the defendant's crane operator was digging a trench in which the plaintiff was to lay some pipe. His own work being slack, the plaintiff attempted to assist the crane operator by guiding the clamshell bucket of the crane with his hands as it was lowered into the trench. The plaintiff was struck by the bucket. The defendant's crane operator was found to have negli-

gently operated the crane's bucket in an unsafe manner and negligently failed to warn plaintiff before operating the bucket in such manner. The court held that the safe-place statute was inapplicable to such a situation. The court stated:

"As applied to a 'place of employment' such statute has reference to an unsafe condition rather than to an act in the process of taking place. The pleadings did not raise any issue as to any unsafe condition of the power shovel, nor did the evidence establish such an unsafe condition. The alleged acts of defendant's crane operator as to the manner of lowering or dropping the bucket of the power shovel, and failing to warn plaintiff before so dropping the bucket, relate to acts of operation as distinguished from the condition of the machine. The safe-place statute has no application to such acts of operation, and the issue of the crane operator's negligence should have been submitted to the jury on the basis of common-law negligence." *Deaton, supra* at 352–353.

In *L. G. Arnold, supra,* defendant's crane operator carried a steel beam in a sling while the plaintiffs walked along at each end of the beam to prevent it from swinging. The crane operator carelessly swung the boom of the crane into power lines, causing injuries to the plaintiffs. The court held that the "acts of operation" rule of *Deaton, supra* controlled and the safe-place statute was inapplicable. *L. G. Arnold, supra,* at 525–526.

The plaintiff in the *Gilson* case was injured by a bull at a livestock auction while seated on a bench the defendants had placed in the sales ring. The court cited *Deaton* in holding that there was no safe-place violation. *Gilson, supra,* 19 Wis.2d at 257.

In *Gross v. Denow, supra,* 61 Wis.2d at 47, we said: "This court has made clear that the 'safe-place statute deals with unsafe conditions and not with negligent acts as such.'" In the *Gross* case, the defendant race-track operator maintained a narrow roadway he knew to be

simultaneously used by both pedestrian frequenters and the vehicular traffic to exit from defendant's premises. The defendant was found to have violated the safe-place statute in that the roadway did not provide protections for pedestrian frequenters from vehicular traffic. *Id.* at p. 47–48.

The most recent applications of the *Deaton* "acts of operation" rule were in the *Korenak* and *Barth* cases. In *Korenak, supra,* 71 Wis.2d at 77, the court sustained a demurrer to a cause of action alleged under the safe-place statute where the plaintiff, a student at an adult vocational rehabilitation center, was injured in an assault by other students who allegedly had been admitted despite records of violent behavior and had previously shown animosity toward the plaintiff. In holding the safe-place statute inapplicable the court said that "even though he might be classified as a 'frequenter,' . . . it is clear that activities conducted on the premises do not fall within the protection of the safe-place statute, and that it is only to unsafe physical conditions that the statute applies." *Korenak, supra,* at 84.

In *Barth v. Downey, supra,* 71 Wis.2d 775, the plaintiff was engaged in dismantling and removing ventilation ducts at defendant's site in connection with a remodeling job defendant was performing. The method used by plaintiff in removing these ducts was to climb up on the duct and cut the outside supports of one section of the duct with an acetylene torch. Plaintiff would then crawl inside the duct itself and, while kneeling in an adjacent, supported section of the duct, cut away the unsupported section. While he was cutting away one of these unsupported sections, the bottom section of the duct the plaintiff was kneeling in dropped out and the plaintiff fell to the floor. The court held that the defendant owed no duty to the plaintiff under the safe-place statute. The court stated:

"Our court has made clear that the safe-place statute '. . . has reference to an unsafe condition rather than to an act in the process of taking place.' This was said in a case where the manner of lowering or dropping the bucket by a crane operator resulted in injury to a 'frequenter' of a 'place of employment.' While here the plaintiff was injured by his own act or operation, the same result must be reached. Plaintiff's climbing into the ceiling-high duct and weakening its supports constituted an *act* that was unsafe rather than a *condition* that was unsafe. His injuries must be related to *acts* of operation as distinguished from the *condition* of the duct. We follow *Deaton* to hold that the safe-place statute has 'no application to such acts of operation.' Or, as our court has more recently stated the same rule, the safe-place statute '. . . deals with unsafe conditions and not with negligent acts as such.' " (Emphasis in text; footnotes omitted.) *Barth v. Downey, supra* at 779–780.

The "acts of operation" rule applies to the instant case. The plaintiff, John Stefanovich, in his third cause of action for recovery under the safe-place statute alleged that Middle West's crane operator negligently assured him that the steel rings could be safely loaded onto the truck in a staggered, stacked formation. Stefanovich alleged further that while the crane operator was negligently loading the truck in this manner with his assistance, one of the rings shifted and fell toward him. These allegations describe an accident caused by negligent "acts of operation" or "activity conducted on the premises" rather than an unsafe condition of the premises.

Stefanovich contends that the manner in which Middle West's crane operator stacked the steel rings in the truck "constituted a dangerous condition existing in a place of employment." The plaintiff states that the safe-place statute has been held to apply to conditions unassociated with structure and that one of the conditions unassociated with the structure to which the safe-place

statute has been held to be applicable is the unsafe stacking or piling of things. Stefanovich cites two cases in support of this contention: *Peschel v. Klug,* 170 Wis. 519, 175 N.W. 805 (1920) and *Uhrman v. Cutler-Hammer,* 2 Wis.2d 71, 85 N.W.2d 772 (1957). These cases are not in point; neither case involves any "act of operation." Rather, in both cases, the injuries were caused by items that were stacked for storage purposes.

In *Peschel,* the defendant contractors had stacked three large timbers on their construction site, alongside an alley. Plaintiff testified that while he was standing still in the alley next to the timbers, the top one fell due to a cause unknown to him and broke his leg. *Peschel v. Klug, supra,* 170 Wis. at 520. This case involved no acts of operation with regard to the timbers; no stacking or piling of them was being carried out. The court noted that the timbers had been sitting on the premises of the construction site for several days prior to the accident. *Id.* at 519. The timbers can logically be described as part of the physical condition of the premises. Neither the plaintiff nor anyone else was involved in piling or stacking the timbers at the time of the accident.

The *Uhrman* case is characterized by Stefanovich as an "unsafe stacking case." But in that case, the ramps which fell on the plaintiff were not stacked or piled while the plaintiff was present. These ramps in fact, were not being used at all; rather, they were stored, leaning against the wall of the defendant's premises. *Uhrman, supra,* 2 Wis.2d at 73.

In the *Uhrman* case, the accident occurred at the defendant's warehouse where the plaintiff had come to deliver a truckload of goods. After unloading his truck, the plaintiff pulled a tarpaulin across the open back of the truck and was bending down to retrieve a freight bill he had dropped in the process when he was struck by two wooden ramps which had been leaning against

the wall. These ramps were four to six inches thick at one end and tapered to a thickness of two inches at the other, and they were used with any truck that had a floor lower than the loading dock. The court found that the ramps were used frequently by various truckdrivers and that the defendant's only provision for storing these ramps when they were not in use was leaning them against a wall. *Id.* at 76.

Thus, the ramps in the *Uhrman* case may logically be described as "conditions" of the premises. The act or process of stacking the ramps occurred before the injuries were sustained.

To summarize, the court has made a distinction between "condition" of the premises and "acts of operation." Injuries caused by the unsafe "conditions" of an employer's premises come within the meaning of the safe-place statute while injuries caused by negligent or inadvertent acts do not.

In the instant case, Stefanovich was injured during the loading of his truck because of the acts of Middle West's crane operator. Under such circumstances, the "acts of operation" rule limiting the applicability of the safe-place statute applies.

We hold that the third cause of action fails to state a claim on which relief may be granted.

*By the Court.*—Order denying defendants' motion to dismiss the third cause of action in the complaint is reversed and cause remanded.