Anthony VIOLA, Individually and as
Special Administrator of the Estate of
Robert Viola and Christopher Viola, Individually,
Plaintiff-Appellant,

v.

WISCONSIN ELECTRIC POWER CO.,
Defendant-Respondent,

ALLIED INSULATION SUPPLY CO., INC., Foster Wheeler
Energy Corporation, General Electric,
Metropolitan Life Insurance Company,
Oakfabco, Inc., Owens Illinois, Inc.,
Rapid American Corporation and Trane US, Inc.,
Defendants.

Court of Appeals

*No. 2013AP22. Submitted on briefs November 5, 2013.
—Decided December 27, 2013.*

2014 WI App 5

(Also reported in 842 N.W.2d 515.)

541

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert G. McCoy* of *Cascino Vaughan Law Offices*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James A. Niquet*, *Travis J. Rhoades*, and *Stacy K. Luell* of *Crivello Carlson S.C.*, of Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J.  Anthony Viola, individually and as special administrator of the estate of his father, Robert Viola, and Christopher Viola[1] appeal the trial court's grant of summary judgment on the claim asserted against Wisconsin Electric Power Company for violation of the Safe Place statute, WIS. STAT. § 101.11 (2009–10).[2] Viola sued Wisconsin Electric under the Safe Place statute, alleging that the presence of asbestos in the air during and following routine repairs to Wisconsin Electric's buildings constituted an unsafe condition associated with the premises. Viola also alleged that Wisconsin Electric had actual and/or constructive notice of the condition, but failed to take any

---

[1] Hereafter we refer to the appellants collectively as "Viola."

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

steps to remedy it. On appeal, Viola contends that the trial court erred in concluding that the presence of asbestos in Wisconsin Electric's premises as alleged in Viola's amended complaint was not an "unsafe condition," but rather, a negligent "act of operation" barring recovery. We agree with Viola, and therefore reverse and remand for trial.

BACKGROUND

## A. Nature of the Case

¶ 2.   Robert Viola worked as an insulator or "pipe coverer" from the mid-1950s to the early 1980s. Over the course of twenty-five years, he worked for various companies, and some of the projects on which he worked were located at properties owned by Wisconsin Electric. While working in buildings owned by Wisconsin Electric, Viola was exposed to asbestos dust, which was released into the air when asbestos-containing insulation was installed, removed, and/or replaced. As a result of his asbestos exposure, Viola developed malignant mesothelioma in May 2009 and died in December of that year. Viola sued numerous defendants, including Wisconsin Electric, for negligence relating to his asbestos exposure.

## B. Allegations Against Wisconsin Electric

¶ 3.   As pertinent to this appeal, Viola's amended complaint alleged the following with regard to Wisconsin Electric:

> Defendant Wisconsin Electric Power Company is a Wisconsin corporation and at all times was or is doing business within the State of Wisconsin, under the name Wisconsin Electric Power Company . . . .

546

This claim is asserted against the following defendants (collectively the premises defendants) who owned premises at which decedent may have been exposed to asbestos:

a. A.O. Smith Corporation;

b. Rockwell Automation, Inc.;

c. Miller Brewing Company;

d. Pabst Brewing Company;

e. Wisconsin Electric Power Company.

Decedent [Robert Viola] worked as an employee of independent contractors in places of employment owned and/or controlled by the premises defendants.

During times when decedent was working at the premises, asbestos products were being installed or removed so as to create the condition of airborne asbestos on a regular and frequent basis.

Defendants knew of the condition of airborne asbestos in the workplace.

Defendants knew or should have known of the health hazards of asbestos.

During decedent's employment at the premises, each defendant owed a duty to furnish and maintain a place of employment as safe as the nature of its business would reasonably permit as set forth under the common law and codified in Wisconsin Statute § 101.11, titled "Employer's duty to furnish safe employment and place."

Defendants violated their duty to furnish a safe workplace for decedent in one or more of the following ways:

a. failing to adequately warn decedent of the dangers of harm from exposure to asbestos;

547

b. failing to instruct decedent adequately about safety precautions for exposure to asbestos;

c. failing to establish adequate safety measures to protect decedent from exposure to asbestos;

d. failing to adequately test for asbestos where decedent worked;

e. employing any contractor which failed to take reasonable precautions against the danger of asbestos;

f. allowing the use of asbestos containing products at the premises;

g. failing to assign or hire personnel qualified to recognize, evaluate and control asbestos exposures at the premises.

As a direct and proximate result of the acts and omissions of the premises defendants above, decedent and plaintiffs were injured as described above.

(Some punctuation added; some numbering omitted.)

## C. Discovery

¶ 4.   Discovery yielded numerous facts supporting Viola's claim, none of which Wisconsin Electric has contradicted.[3] These facts, which we derive from Viola's appellate brief, are supported by the record.

---

[3] On appeal, Wisconsin Electric claims that most of the facts asserted by Viola are irrelevant because they were not considered by the trial court, which granted summary judgment on the basis that the amended complaint failed to state a claim. Wisconsin Electric asserts "these facts are completely irrelevant to the Trial Court's decision which is on review as these facts were not considered by the Trial Court. By citing these facts at the appellate level, [Viola] is attempting to create a retrospective claim which was not pled in the first place." Wisconsin Electric's assertion is based on a misunderstanding of the standard of review. We do not merely review the trial court's

¶ 5.   For example, Viola submitted evidence that, as a result of the installation, repair, and removal of asbestos-containing products, he was in constant contact with asbestos dust while working in Wisconsin Electric's buildings:

> The . . . facilities where the decedent Robert A. Viola worked in the 1960's were filled with airborne asbestos. In those days [Wisconsin Electric] contractually required that its power generation equipment, transmission conduits, and other fixtures be insulated with asbestos. At [Wisconsin Electric]'s Oak Creek Power Plant, more than 423,924 square feet – the equivalent of over seven football fields – of asbestos block insulation, more than 95,765 feet – over 18 miles – of asbestos covering material, and at least 7,204 bags of asbestos cement were affixed to the structures . . . .

> All the tradesmen – pipe fitters, welders, steel workers, electricians, mechanics, construction workers, as well as [Wisconsin Electric]'s own employees – were constantly exposed to airborne asbestos. At Oak Creek Unit 5, where Mr. Viola worked "twelve hours a day" for about eight months, large numbers of people from different trades toiled together in partially enclosed spaces where the release of asbestos dust would circulate for all the workers to breath[e].

> . . . .

> The men and women who worked at [Wisconsin Electric]'s Oak Creek plant were regularly exposed to

decision; rather, we review the grant or denial of summary judgment independently of the trial court. *See Smaxwell v. Bayard*, 2004 WI 101, ¶ 12, 274 Wis. 2d 278, 682 N.W.2d 923. We also remind Wisconsin Electric that " 'Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute.' " *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (citation omitted).

other types of asbestos products such as magnesia covering material. When the boilers or turbines went off-line, called "outages," old magnesia covering insulation had to be torn off and new material was applied. This product was required by [Wisconsin Electric]'s contract specifications to have "not less than 10% long asbestos fibers" . . . . The magnesia covering "came in a bag," and people who toiled on the turbine maintenance work, like Mr. Viola, were exposed to this "fibrous, flaky material" that was "very dusty."

. . . .

At the end of one of his twelve-hour shifts, Mr. Viola's clothing matched [Wisconsin Electric]'s own published description of workers "dipped in flour." His clothes would be covered in the insulation material [Wisconsin Electric] mandated be used to protect its structures: "you would be very dusty."

¶ 6. The evidence included the following testimony from Viola's deposition:

Now I could be working on the very far end of that powerhouse, and I could be mixing a mud box of asbestos cements; and there could be six different trades working on the . . . other end of that powerhouse and, because on most construction sites there's a draft in the building, this is like a chimney. I mean you throw something up in the air, you're going to see it floating. It doesn't take off, but it floats; and that asbestos fiber mixing in that box got up high enough, or wherever it got up, and just slowly filtered, filtered, filtered, filtered to the other end of that building; and in between its travel, there must have been 40 men breathing in that fiber and not knowing it.

¶ 7. Additionally, Viola submitted evidence that Wisconsin Electric either knew or should have known not only that individuals working in its buildings were

550

continually exposed to asbestos, but also that this exposure was harmful:

Years before Mr. Viola started to work at [Wisconsin Electric], industry management also knew that asbestos represented a serious hazard to workers. Dr. Henry A. Anderson gave this uncontradicted testimony:

In my opinion, with reasonable medical certainty, by the decades of the 1930s and 1940s it was known or could have been known by the medical community, industry management, workers' compensation insurers and occupational regulatory authorities that asbestos dust inhalation posed a significant human health hazard and that asbestos fibers penetrated deep into the lungs where they persisted, could not be removed, led to irreversible and progressive tissue damage which caused diseases which were incurable and could lead to disability and death.

. . . .

The head of the health and safety department at WEPCO, Russell Selbo, testified that he knew that asbestos insulation was present at the plants:

Q. . . . . While you were working as a test engineer, you knew asbestos – and this is back in the '40's, early '50's – you knew asbestos was being used at the power plant at Wisconsin Electric; is that right?

A. I knew that the insulating material contained asbestos.

Q. And then you went into the safety department in 1956 with knowledge that asbestos was being used at the Wisconsin Electric power plants including Oak Creek; is that right?

A. I realized that it was contained in the insulation that was being used in the plants.

551

¶ 8.    Viola also submitted evidence showing that Wisconsin Electric knew that the condition of visible airborne asbestos dust was released *from the normal practice* of insulating power generation equipment and systems. Sol Burstein, the executive in charge of all Wisconsin Electric's power plants in the 1960s, testified:

> Q. And you had the opportunity to watch [the insulators] doing sawing and fitting of the insulation on the steam pipes; is that right?
>
> A. Yes.
>
> Q. And we can agree that that process creates dust; is that right?
>
> A. Is –
>
> Q. Creates dust; is that right?
>
> A. Depending on the definition of dust, I assume we can agree on it.

¶ 9.    In addition, Viola submitted evidence showing that Wisconsin Electric did nothing to alleviate the dangers of asbestos exposure: "Wilbur Ebel, who worked for [Wisconsin Electric] from 1957 to 1994, testified he could not recall any protective measures being undertaken by [Wisconsin Electric] until the 1980's."

¶ 10.    Viola also submitted evidence that his exposure to asbestos caused his death:

> Henry A. Anderson, M.D., has concluded that "Mr. Viola's asbestos exposures," including those occurring at [Wisconsin Electric] in the early 1960's, "substantially contributed to the development of his asbestosis and malignant mesothelioma" that ultimately caused his death.

## *Summary Judgment*

¶ 11. Wisconsin Electric moved for summary judgment, which the trial court granted. The trial court solely focused on Viola's amended complaint, determining that it did not properly allege any Safe Place liability:

> Importantly, Wisconsin's Safe Place statute governs only unsafe physical conditions of the premises. It does not involve reckless or negligent acts of persons on the premises. This is known as the "acts of operation" rule.
>
> . . . .
>
> In this case, the alleged unsafe condition is airborne asbestos dust . . . .
>
> The plaintiff's complaint alleges that during the times when the decedent was working at the premises, asbestos products were being installed or removed so as to create a condition of airborne asbestos on a regular and frequent basis. This allegation . . . implies that the condition of airborne asbestos was, in fact, a result of activity of removing or installing asbestos products. In other words, but for the activity of installing or removing asbestos, the asbestos would not have become airborne.
>
> . . . .
>
> In other words, Robert Viola's injuries were related to an unsafe act of operation; working with asbestos, and doing so without proper protection or precautions. Whether the exposure was due to the negligence of Robert Viola, his coworkers, his employer, the manufacturer, or anyone else is of no significance; it is nevertheless an unsafe activity that caused the injury.
>
> . . . .

553

Based on the foregoing analysis, the court finds that [Viola does] fail to state a claim under the Wisconsin Safe Place Act. As a result, the court will grant the defense motion for summary judgment in that a cause of action was not established.

(Some capitalization added.)

¶ 12. Viola appeals.

## ANALYSIS

¶ 13. Although Viola makes two arguments on appeal, we address only one. Viola first argues that the trial court erred in granting summary judgment. He additionally argues that the doctrine of issue preclusion bars Wisconsin Electric from litigating the issue of whether it violated the Safe Place statute in this case because, in 2001, a jury in another Milwaukee County case found that Wisconsin Electric violated the Safe Place statute by negligently failing to furnish a safe place of employment at the same Oak Creek power plant where Viola worked. Because we conclude, as explained in more detail below, that the trial court erred in granting summary judgment, we do not address Viola's issue preclusion argument. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 ("we decide cases on the narrowest possible grounds").

¶ 14. Thus, the sole issue before us is whether the trial court erred in granting summary judgment on Viola's negligence claim against Wisconsin Electric. We affirm the trial court's grant of summary judgment only if there exists no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. *See Novak v. American Family Mut. Ins. Co.*, 183 Wis. 2d

554

133, 136, 515 N.W.2d 504 (Ct. App. 1994); Wis. Stat. § 802.08(2). We review *de novo* the grant or denial of summary judgment, employing the same methodology as the circuit court. *See Smaxwell v. Bayard*, 2004 WI 101, ¶ 12, 274 Wis. 2d 278, 682 N.W.2d 923. First, we examine the pleadings to determine whether a proper claim for relief has been stated. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If the complaint states a claim and the answer joins the issue, our inquiry then turns to whether any genuine issues of material fact exist. *See id.* The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the party opposing the motion. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 23, 241 Wis. 2d 804, 623 N.W.2d 751.

¶ 15.   Specifically, the parties disagree on whether the trial court correctly determined that Viola's claim was barred because the amended complaint alleged "acts of operation" rather than "an unsafe condition associated with the premises." Viola argues that the amended complaint *does* allege an unsafe condition associated with the premises. Wisconsin Electric, on the other hand, contends that the trial court correctly granted summary judgment in its favor because the amended complaint merely alleges "acts of operation" for which a plaintiff may not recover under the Safe Place statute.

¶ 16.   We must therefore determine whether Viola's amended complaint alleges an unsafe condition associated with the premises or a negligent act of operation. "This requires us to interpret and apply the Safe Place statute" to the facts, which "presents a question of law we review *de novo*." *See Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 17, 245 Wis. 2d 560, 630 N.W.2d 517 (capitalization and emphasis added).

¶ 17. Wisconsin's Safe Place statute, Wis. Stat. § 101.11:[4]

"is a negligence statute that, rather than creating a distinct cause of action, instead establishes a duty greater than that of ordinary care imposed at common law." It imposes a duty on premises owners to construct, repair, and maintain premises so as to make them safe for employees or "frequenters." An employee of an independent contractor doing work on the premises is a frequenter working in a place of employment. The statute also requires owners to furnish and use safety devices and safeguards, and to adopt and use methods and processes reasonably adequate to render the place of employment safe. While an owner does not need to guarantee absolute safety, it must provide an environment as free from danger to the life, health, safety, or welfare of employees and frequenters as the nature of the premises will reasonably permit.

*See Anderson v. Proctor & Gamble Paper Prods. Co.*, 924 F. Supp. 2d 996, 1001–02 (E.D. Wis. 2013) (citations omitted).

¶ 18. The Safe Place statute protects against unsafe " 'structural defects,' " as well as "unsafe 'conditions

---

[4] Wisconsin Stat. § 101.11(1) provides, in its entirety:

Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

associated with the structure' of a building." *See id.* at 1002. If a "hazardous condition results from an unsafe condition associated with the structure, such as a defect attributable to the failure to safely repair or maintain, liability will only be found where the owner had actual or constructive notice of the defect." *Id.* The statute does not, however, "involve reckless or negligent acts of persons on the premises." *See Hofflander v. St. Catherine's Hosp. Inc.*, 2003 WI 77, ¶ 91, 262 Wis. 2d 539, 664 N.W.2d 545. This is known as the "acts of operation" rule. *See id.*

¶ 19.   For example, a district court in the Eastern District of Wisconsin has held that the release of asbestos dust into the air during regularly-conducted repair work of a paper mill created an unsafe condition associated with the structure. *See Anderson*, 924 F. Supp. 2d at 1003. In *Anderson*, an electrician who died of cancer caused by asbestos exposure,[5] spent about half of his career working at the defendant's paper mill, during which time he "was exposed to asbestos in a number of ways." *Id.* at 999. For example, as an electrician, he regularly had to cut through asbestos insulation to get to electrical wiring. *See id.* Similarly, "maintenance and blow-out of switch gear caused significant asbestos exposure. In addition . . . [the decedent] often worked in close proximity to pipefitters, pipe insulators, and other . . . employees who were replacing steam pipe insulation, performing repairs, or cleaning up insulation and debris simultaneously." *Id.* at 1000. In other words, the plaintiff contended that "working in the dusty conditions created by the removal and replacement of the insulation was a 'normal, everyday process'

---

[5] The Safe Place claim was brought by the decedent's wife. *See Anderson v. Proctor & Gamble Paper Prods. Co.*, 924 F. Supp. 2d 996, 998–99 (E.D. Wis. 2013).

for the electricians when assigned to the mill." *Id.* Moreover, the plaintiff contended that the factory owner never warned the decedent "about the dangers of asbestos, or even that the pipe insulation contained asbestos at all." *Id.*

¶ 20.   Likewise, this court has held, in an unpublished case, that the release of asbestos dust into the air during regularly-conducted repair of steam pipes created an "unsafe condition" sufficient to support a plaintiff's claim that a factory owner failed to make its factory "safe" as required by WIS. STAT. § 101.11. *See Calewarts v. CR Meyer and Sons Co.*, No. 2011AP1414, unpublished slip op., ¶¶ 6–8, 24, 45, (WI App July 3, 2012). In *Calewarts,* the decedent[6] operated a variety of machines in the defendant's factory. *See id.,* ¶ 4. He was exposed to asbestos on numerous occasions, including when the steam lines would leak and repair-workers removed pipe insulation to repair the leaks. *Id.,* ¶ 6. For example:

> Given the frequency of repairs, [the decedent]'s coworker was "certain" that [the decedent] would have been operating presses, and adjacent presses, where piping was being repaired. A coworker testified that large blowers for drying the ink on the fourth floor presses blew "everything else around, too. I mean, there was a lot of dust and I'm sure there was a lot of asbestos dust in there, too." Insulation was frequently knocked off the press ovens by employees or fell off due to vibrations from the equipment running. Insulation dust also fell off the ovens on the presses when the doors to the ovens were slammed shut. "[I]t was always a problem. There was . . . always dust."

---

[6] The claim was brought by the decedent's wife. *See Calewarts v. CR Meyer and Sons Co.*, No. 2011AP1414, unpublished slip op., ¶ 2 (WI App July 3, 2012).

*Id.*, ¶ 7 (brackets and ellipses in *Calewarts*). The decedent and other workers "were not advised to wear protective gear and no safety warnings or instructions about asbestos were given until sometime after 1985." *Id.*, ¶ 8.

¶ 21. *Anderson* and *Calewarts* present strikingly similar circumstances to those alleged in Viola's complaint. The decedents worked in buildings where pipes were covered with asbestos-containing insulation. *See Anderson*, 924 F. Supp. 2d at 999; *Calewarts*, 344 Wis. 2d 124, ¶ 5. The regular maintenance and/or repair of the premises required that the asbestos be disturbed. *See Anderson*, 924 F. Supp.2d at 999–1000; *Calewarts*, 344 Wis. 2d 124, ¶ 6. The asbestos *was* disturbed—in some instances by the decedent while performing work in the usual way as required by the decedent's employer and/or the building owner. *See Anderson*, 924 F. Supp.2d at 999–1000; *Calewarts*, 344 Wis. 2d 124, ¶¶ 7, 24. The building owner knew about the asbestos and its health hazards, but failed to protect the workers who frequented the premises, including the decedents. *See Anderson*, 924 F. Supp.2d at 1000; *Calewarts*, 344 Wis. 2d 124, ¶ 8. Finally, the workers died from cancers caused by their asbestos exposure. *See Anderson*, 924 F. Supp.2d at 1000; *Calewarts*, 344 Wis. 2d 124, ¶ 2.

¶ 22. Yet, despite these striking similarities, Wisconsin Electric contends that we ought to conclude that the presence of asbestos dust in its buildings while Viola worked there was not an "unsafe condition," as the courts found in *Anderson* and *Calewarts*, but rather, that the presence of asbestos dust was caused by Viola's negligent "act of operation." The crux of Wisconsin Electric's argument is that because Viola performed some of the work releasing the asbestos dust into the air he cannot recover for the damage it caused. In support of its contention,

Wisconsin Electric relies heavily on *Hofflander*, the same case the trial court relied on in granting summary judgment, as well as several factually-similar cases.

¶ 23.   We are not persuaded by Wisconsin Electric's contentions, however, because *Hofflander* and other "acts of operation" cases are inapposite. In *Hofflander*, the plaintiff was committed to a hospital under an emergency detention. *Id.*, 262 Wis. 2d 539, ¶ 10. She learned that there was a loose air conditioner in the window of one of the third-floor rooms. *See id.*, ¶ 18. The plaintiff went to the window of that room "and began pulling the air conditioner towards her by its corners, splintering the wood mounting supporting it in the window, until the air conditioner crashed to the floor." *Id.*, ¶ 21. She fell out of the window and suffered numerous injuries, *id.*, ¶ 22, and consequently sued the hospital under the Safe Place statute, *see id.*, ¶ 23. The supreme court, in concluding that the hospital did not violate the Safe Place statute, explained that but for the plaintiff's negligent act of "grabbing and tearing the air conditioner out from its mounting in the window, the air conditioner was reasonably 'safe,' even assuming that the screws supporting the air conditioner were loose *or too short." Id.*, ¶ 97 (footnote omitted). It held "that [Wis. Stat.] § 101.11 does not apply to unsafe conditions *caused by an injured party's own negligence or recklessness." See id.*, ¶ 101 (emphasis in *Hofflander*).

¶ 24.   In contrast to the circumstances in *Hofflander*, Viola's negligence or recklessness did not cause the unsafe condition. In fact, the complaint and facts set forth show that the asbestos was necessarily disturbed as part of the maintenance and/or repair work required at the premises. *See also Neitzke v. Kraft-Phenix Dairies*, 214 Wis. 441, 446, 253 N.W. 579 (1934) ("[T]he employer's duty is to make the premises safe for the performance of acts *which he knows or reasonably*

*should know are going to be performed thereon."*) (emphasis added). We therefore conclude the facts of *Hofflander* and similar "acts of operation" cases are too attenuated to apply here. *See also, e.g., Barth v. Downey Co.*, 71 Wis. 2d 775, 779, 239 N.W.2d 92 (1976) ("Plaintiff's climbing into the ceiling-high duct and weakening its supports constituted an act that was unsafe rather than a condition that was unsafe."); *Stefanovich v. Iowa Nat'l Mut. Ins. Co.*, 86 Wis. 2d 161, 163–64, 169, 271 N.W.2d 867 (1978) (employee injured by "act of operation" when a crane operator negligently loaded steel rings onto truck, causing steel ring to fall toward employee); *Deaton v. Unit Crane & Shovel Corp.*, 265 Wis. 349, 352–53, 61 N.W.2d 552 (1953) (employee injured by "act of operation" when another employee negligently struck him with the bucket of a power shovel attached to a crane); *Leitner v. Milwaukee Cnty.*, 94 Wis. 2d 186, 194, 287 N.W.2d 803 (1980) (per curiam) (burglary that ultimately caused death of zoo guard was an "activit[y]" rather than an unsafe condition).

██ ██

¶ 25. Thus, relying on *Anderson* and *Calewarts* to guide our analysis, we conclude that Viola's amended complaint does allege an "unsafe condition." The amended complaint alleges that Viola worked in premises where pipes where covered with asbestos-containing insulations. The regular maintenance and/or repair of the premises required that the asbestos be disturbed. The asbestos was disturbed—in some instances by the decedent while performing work in the usual way as required by the decedent's employer and/or Wisconsin Electric. There is no evidence that Viola performed any of this necessary maintenance or repair work negligently. Furthermore, Wisconsin Electric knew about the asbestos and its health hazards, but failed to protect Viola from these hazards. Finally, Viola

561

died from mesothelioma caused by his asbestos exposure. Given these facts, we conclude that the presence of asbestos dust in the air at Wisconsin's Electric's premises was an "unsafe condition" and that Viola's amended complaint properly alleges a negligence claim asserting Wisconsin Electric's violation of the Safe Place statute.

¶ 26.   Continuing our summary judgment analysis, *see Kersten*, 136 Wis. 2d at 315, we also conclude the evidence Viola submits does create material issues of fact. As noted, Viola submitted numerous facts in his brief showing: as a result of the installation, repair, and removal of asbestos-containing products, he was in constant contact with asbestos dust while working in Wisconsin Electric's buildings; Wisconsin Electric either knew or should have known not only that individuals working in its buildings were continually exposed to asbestos, but also that this exposure was harmful; Wisconsin Electric did nothing to alleviate the dangers of asbestos exposure; and Viola's exposure to asbestos caused his death. Wisconsin Electric, choosing to focus solely on Viola's amended complaint, did not dispute that this evidence creates material issues of fact.

¶ 27.   Therefore, because the complaint does properly allege a claim under the Safe Place statute, and because the evidence submitted does create issues of material fact, we conclude that summary judgment in Wisconsin Electric's favor is inappropriate. We therefore reverse the trial court's order and remand the matter for trial.

*By the Court.*—Order reversed and cause remanded for further proceedings.